STATE of Minnesota, Respondent,

v.

Derrick HOLLIDAY, Appellant.

No. A07–538.

Supreme Court of Minnesota.

March 6, 2008.

---

Michael A. Hatch, Minnesota Attorney General, St. Paul, David Craig Brown, Assistant County Attorney, Minneapolis, for respondent.

Jodie Lee Carlson, Assistant State Public Defender, St. Paul, for appellant.

## OPINION

ANDERSON, G. Barry, Justice.

Appellant Derrick Holliday was convicted in a bench trial of first-degree murder, attempted first-degree murder, second-degree murder, and attempted second-degree murder for the killing of Alan Reitter in downtown Minneapolis. On direct appeal, appellant asks us (1) to vacate his first-degree murder and attempted first-degree murder convictions on the basis that there was insufficient evidence of premeditation and (2) to reverse his second-degree murder and attempted second-degree murder convictions and remand for a new trial on the basis that the admission of a witness's prior out-of-court statements violated the Confrontation Clauses of the United States and Minnesota Constitutions and the hearsay rules. We affirm appellant's convictions.

On the evening of March 31, 2006, appellant went to the Crown Theater, located in the Block E complex in downtown Minneapolis, with a loaded Smith and Wesson .44 magnum revolver. A dispute erupted inside the theater, and a police officer described the situation as "a riot" in which people were fighting, screaming, and throwing chairs. After the police ordered everyone out of the building, two groups "squared off" in the middle of Sixth Street. Appellant's group was facing Gluek's Restaurant and Bar, and the other group was

facing Jimmy John's. Members of the two groups screamed and raised their shirts up at each other, but there was no physical contact between them. One of the members of the group facing Jimmy John's reached behind his back but was not seen with a weapon. Appellant then pulled out his revolver and pointed it at the group facing Jimmy John's, causing the group members to flee. He then ran diagonally across Sixth Street toward First Avenue and fired multiple shots, holding the revolver directly in front of him with his arm outstretched. The district court found, based on witness testimony, that appellant "was aiming at a specific person as he chased that person" and "had 'a bead' on the person he was chasing."

Meanwhile, unrelated to this activity, Alan Reitter was in downtown Minneapolis with a group of friends. At approximately 11:30 p.m., the Reitter group left the Refuge Bar, located on First Avenue between Fourth Street and Fifth Street, for the Lone Tree Bar, located on Sixth Street between Hennepin Avenue and First Avenue. Upon hearing gunshots as they walked down Sixth Street, some of Reitter's companions took cover near the pay booth of the parking lot bordering Sixth Street and others took cover behind the short brick barriers on the parking lot's perimeter. Appellant fired toward the parking lot from in front of the pay booth, striking Reitter in the face. Appellant ran by Reitter and proceeded on First Avenue toward Fifth Street.

Reitter was found lying in a pool of blood near the exit arm of the parking lot pay booth. He died the next day, and the medical examiner who performed the autopsy testified that Reitter died from a gunshot wound to the head and that the manner of Reitter's death was homicide. The medical examiner concluded that Reitter's injuries were consistent with the use of a .44–caliber magnum handgun.

Minneapolis police officer Jomar Villamor was positioned at the corner of First Avenue and Fifth Street when he heard gunshots to the south and then saw appellant running up First Avenue and pointing a revolver at a person running in front of him. Villamor did not see appellant fire the revolver, but two other witnesses testified that they saw appellant shoot in the direction of the other person running up First Avenue. Appellant turned up Fifth Street, and Villamor pursued him with his own gun drawn and yelled numerous times, "Police, drop the gun." Villamor testified that once during the chase appellant pointed the revolver directly at him. Villamor followed appellant into an alley connecting Fifth Street and Fourth Street. Villamor saw appellant throw the revolver toward a row of vehicles before appellant reached Fourth Street, and Villamor heard the sound of "metal-to-metal contact" and the security alarm of a red pickup. After leaving the alley, appellant ran down Fourth Street, turned up First Avenue, and attempted to enter "the Karma Bar." Appellant was detained by bouncers at the bar entrance and then handcuffed by Villamor.

Another officer who had arrived at the scene took custody of appellant so that Villamor could retrieve the revolver. Villamor returned to the alley and found the revolver in the bed of the red pickup. Four discharged cartridge casings and two live cartridges were inventoried with the revolver. The predominant DNA profile on the revolver matched appellant's DNA profile, and multiple witnesses testified that the revolver recovered by the police looked similar to the revolver wielded by the shooter.

The police interviewed appellant after taking him into custody, and a DVD re-

cording of the interview and an accompanying transcript were admitted as evidence at trial. Appellant told the police that he brought the revolver downtown because he did not want his girlfriend to find it and because he does not "really got too many pals, or people that hang." He claimed that he pulled out the revolver as people were "coming at" him and that another person pulled out a gun in response.[1] Appellant said that he shot into the air to scare people away and then ran, shooting at the ground. He maintained that he acted in self-defense and did not intend to shoot anyone.

On April 20, 2006, appellant was charged with first-degree premeditated murder under Minn.Stat. § 609.185(a)(1) (2006), second-degree intentional murder under Minn.Stat. § 609.19, subd. 1(1) (2006), attempted first-degree premeditated murder under Minn.Stat. §§ 609.185(a)(1) and 609.17 (2006), attempted second-degree intentional murder under Minn.Stat. §§ 609.19, subd. 1(1), and 609.17 (2006), and first-degree assault under Minn.Stat. § 609.221, subd. 2(a) (2006). Appellant waived his right to a jury trial, and his bench trial commenced on September 28, 2006.

At trial, the State called A.A. as a witness to testify as to information he gave in an interview with Sergeant Charles Adams in April 2006 and in his meetings with Assistant Hennepin County Attorney Robert Streitz in May 2006 and September 2006. After viewing a report detailing his interview with Adams and a file memorandum from the May meeting, A.A. claimed he could not remember those discussions, and, after viewing a document from the September meeting, A.A. said he remembered talking to someone in the county attorney's office but could not remember what the conversation was about. On cross-examination, A.A. agreed that his regular ecstasy use possibly affected his ability to remember.

Sergeant Adams then testified as to what A.A. said in the April 2006 interview, including A.A.'s claim that he was appellant's intended victim when Reitter was shot. Jessica Immerman, a legal services specialist in the county attorney's office, was present at A.A.'s meeting with Streitz in September 2006. Immerman testified that Streitz read a report of the April interview to A.A. and that A.A. acknowledged that he had made the statements included in the report. Immerman then read into the record the report of the April interview. According to Immerman, Streitz also read to A.A. a memorandum Streitz had made of their May meeting and A.A. affirmed its contents. Immerman then read into the record the memorandum of the May meeting, which included A.A.'s allegation that appellant was chasing and shooting at him when Reitter was shot. Finally, Immerman read into the record a portion of a memorandum summarizing A.A.'s September meeting with Streitz, which documented A.A.'s affirmations of the April report and the May memorandum.[2]

Appellant objected to the testimony of Adams and Immerman and to the reading into the record of the three documents on the bases of the hearsay rules and the Confrontation Clause of the United States Constitution. The district court overruled appellant's objections, concluding that (1) the Confrontation Clause of the United

---

1. Multiple witnesses testified, on the other hand, that they did not observe any other firearms in the fray.

2. Adams entered the details of his April interview with A.A. into the computer on June 15, 2006, and Streitz's memorandum of his May meeting with A.A. was dated August 3, 2006.

States Constitution did not bar the admission of A.A.'s prior statements because appellant had the opportunity to cross-examine him and (2) the testimony of Adams and Immerman and the contents of the three documents were admissible under the recorded recollection hearsay exception of Minn. R. Evid. 803(5) and the residual hearsay exception of Minn. R. Evid. 803(24) (2006) (recodified Sept. 1, 2006, with Minn. R. Evid. 804(b)(5) (2006) to form Minn. R. Evid. 807).

Appellant waived his right to testify, and his counsel neither gave an opening statement nor called any witnesses. The district court found appellant guilty of first-degree murder, second-degree murder, attempted first-degree murder, and attempted second-degree murder. The court also found the aggravating factor of posing a great danger to the safety of people other than Reitter or other victims referred to in the indictment. The court found appellant not guilty of first-degree assault and third-degree murder. Appellant was sentenced to concurrent sentences of life imprisonment without parole for first-degree murder and 180 months imprisonment for attempted first-degree murder.

## I.

■ Appellant argues that his first-degree murder and attempted first-degree murder convictions must be vacated because there was insufficient evidence of premeditation. A person who "causes the death of a human being with premeditation and with intent to effect the death of the person or of another" is guilty of first-degree murder under Minn.Stat. § 609.185(a)(1) (2006). Section 609.185 "incorporates the traditional doctrine of 'transferred intent,'" *State v. Sutherlin,* 396 N.W.2d 238, 240 (Minn.1986), under which "[p]remeditation will transfer with intent if the perpetrator premeditated the murder of an intended victim but accidentally killed an unintended victim," *State v. Hall,* 722 N.W.2d 472, 477 (Minn.2006).

■ When reviewing a sufficiency of the evidence claim, "we view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." *State v. Leake,* 699 N.W.2d 312, 319 (Minn.2005). "The verdict will not be overturned if, giving due regard to the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense." *Id.* "We review criminal bench trials the same as jury trials when determining whether the evidence is sufficient to sustain convictions." *State v. Hough,* 585 N.W.2d 393, 396 (Minn.1998).

## A.

■ Appellant notes that the district court failed to make any specific findings of fact regarding premeditation. Minnesota Rule of Criminal Procedure 26.01, subd. 2, requires that in a case tried without a jury, the court must "specifically find the essential facts in writing on the record." Although the court did not include a finding of premeditation in its findings of fact, the court did make a conclusion of law that appellant "acted with premeditation." We have stated that "a fact found by the court, although expressed as a conclusion of law, will be treated upon appeal as a finding of fact." *Graphic Arts Educ. Found. v. State,* 240 Minn. 143, 145–46, 59 N.W.2d 841, 844 (1953). Furthermore, Minn. R.Crim. P. 26.01, subd. 2, provides that "[i]f the court omits a finding on any issue of fact essential to sustain the general finding, it shall be deemed to have made a finding consistent with the general finding." The district court is thus deemed to have made a specific finding of premedita-

tion in light of its conclusion of law that appellant acted with premeditation and its general finding that appellant is guilty of first-degree premeditated murder. We reject appellant's claim of error regarding the district court's omission of a premeditation finding in its findings of fact.

## B.

The statutory definition of premeditation is "to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission. Minn.Stat. § 609.18 (2006). We have defined premeditation as a state of mind generally proved circumstantially by drawing inferences from a defendant's words and actions in light of the totality of the circumstances.'" Hall, 722 N.W.2d at 477 (quoting State v. Moua, 678 N.W.2d 29, 39 (Minn.2004)). Neither a specific period of deliberation nor evidence of extensive planning is required to prove premeditation, but the state must prove that some appreciable period of time passed after the defendant formed the intent to kill, during which the statutorily required consideration, planning, preparation, or determination took place.[3] State v. McArthur, 730 N.W.2d 44, 49 (Minn.2007) (quoting Moua, 678 N.W.2d at 39). We focus on three categories of evidence from which premeditation may be inferred: motive, the nature of the killing, and planning activity. Id. at 49–50; Moua, 678 N.W.2d at 40.

When assessing a defendant's motive, we consider "'facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred.'" Moua, 678 N.W.2d at 40 (quoting State v. Moore, 481 N.W.2d 355, 361 (Minn.1992)). A victim's "prior conduct * * * known to have angered the defendant" constitutes motive evidence. Id. at 41. The district court found, based on witness testimony, that appellant was in a group that had a "verbal confrontation" with another group in the middle of Sixth Street and that appellant pulled out his revolver after a member of the opposing group "reached behind [his] back." The context of the confrontation and the other person's act of reaching behind his back provided a motive for appellant to shoot at someone in that person's group, thereby supporting the district court's finding of premeditation.

When assessing the nature of the killing, we consider "'facts * * * from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.'" Id. (quoting Moore, 481 N.W.2d at 361). Evidence of the nature of the killing includes the number of times the defendant used the weapon, id., the deliberate placement of wounds at vital areas of the victim's body, Moore, 481 N.W.2d at 361, the infliction of gunshot wounds at close

**3.** Appellant argues that the district court applied an incorrect standard for premeditation. In a footnote in its findings of fact, conclusions of law, and order, the court did state that "[p]remeditation may be formed almost instantaneously," despite the fact that we have rejected the "virtually instantaneous" standard of premeditation. See State v. Goodloe, 718 N.W.2d 413, 421–22 (Minn.2006); State v. Moore, 481 N.W.2d 355, 360–61 (Minn.1992). But the court also delineated the correct standard for premeditation, citing Leake, 699 N.W.2d at 319, for the proposition that "[t]he state * * * must prove some appreciable time passed during which the defendant considered, planned, or prepared to commit the act." Because the evidence supports the court's finding of premeditation under the correct standard, appellant's convictions for first-degree murder and attempted first-degree murder are not reversible based on the court's passing reference to instantaneous premeditation.

range, and a defendant's concern with escape rather than aiding the victim, *McArthur,* 730 N.W.2d at 50.

The district court's findings that appellant chased and aimed his revolver at a specific person, fired multiple shots, ran by Reitter, and fled the scene are all supported by witness testimony. The nature of the killing in this case is similar to the nature of the killings in *McArthur,* 730 N.W.2d 44, and *State v. Richardson,* 393 N.W.2d 657 (Minn.1986). In *McArthur,* we concluded that "the evidence regarding the nature of the killing [was] significant" where the defendant (1) fired multiple shots; (2) shot the victim in the head, from behind, and at close range; and (3) fled the scene following the shooting. 730 N.W.2d at 50. Similarly, we concluded in *Richardson* that there was sufficient evidence of premeditation where the defendant initially fired her gun in reaction to the victim's movement but then "ma[d]e the decision to chase after [the victim] and fire the last two or three shots." 393 N.W.2d at 665. We conclude that the nature of the killing in this case supports the district courts finding of premeditation.[4]

The evidence of appellant's guilt is much stronger than the evidence of guilt in cases in which we have reversed first-degree murder convictions on insufficiency of the evidence grounds. In *State v. Swain,* for example, we concluded that "death from a series of blows cannot, *alone,* support a finding of premeditation in a first degree murder prosecution." 269 N.W.2d 707, 714 (Minn.1978) (emphasis added). Furthermore, in *Bernhardt v. State,* 684

N.W.2d 465, 477, 481 (Minn.2004), and *State v. Berndt,* 392 N.W.2d 876, 880–81 (Minn.1986), we reversed first-degree murder convictions that were based wholly on circumstantial evidence. In contrast to *Swain, Bernhardt,* and *Berndt,* in this case there was both evidence from which the district court could infer premeditation and direct evidence that appellant killed the victim. Based on the foregoing evidence, we hold that the evidence of premeditation was sufficient to support appellant's convictions for first-degree premeditated murder and attempted first-degree premeditated murder.

## II.

Appellant also argues that his convictions must be reversed and the case remanded for a new trial on the basis that his Confrontation Clause rights under the United States and Minnesota Constitutions were violated by the admission at trial of A.A.'s prior statements. The Confrontation Clause of the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause of the Minnesota Constitution contains almost identical language, *see* Minn. Const. art. I, § 6 ("The accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."), and we apply the same analysis under both Confrontation Clauses, *State v. Henderson,* 620 N.W.2d 688, 695 (Minn. 2001).

---

4. In light of the evidence of appellant's motive and the nature of the killing, it is unnecessary for us to consider whether appellant's prior possession of the murder weapon constitutes evidence of planning activity where there is no evidence that appellant brought the revolver downtown with a motive to kill someone.

*But see McArthur,* 730 N.W.2d at 50 (considering the fact that appellant armed himself to be evidence of planning activity although "no evidence of motive was introduced" and "the murder itself is the only indication that [the defendant] and [the victim] may have been acquainted").

In *Crawford v. Washington,* the United States Supreme Court concluded that the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *see also State v. Warsame,* 735 N.W.2d 684, 689 (Minn.2007). Whether a defendant's rights under the Confrontation Clause have been violated by the admission of evidence is a question of law that we review de novo. *Warsame,* 735 N.W.2d at 689.

According to appellant, the admission of A.A.'s prior statements violated the Confrontation Clause because A.A.'s memory loss precluded the opportunity to cross-examine A.A. about the circumstances surrounding his prior statements and the contents of those statements. The district court ruled that although A.A.'s prior statements were testimonial, the Confrontation Clause did not bar their admission because A.A. testified and appellant had the opportunity to cross-examine him.

Language from the Supreme Court's *Crawford* decision indicates that the admission of a witness's prior statements does not violate the Confrontation Clause where the witness appears for cross-examination and claims that he or she cannot remember either making the statements or the content of the statements. First, the Supreme Court in *Crawford* suggested that the Confrontation Clause is not even implicated when a declarant testifies at trial:

> The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of *a witness who did not appear at trial* unless he was unavailable to testify, and the defendant

had had a prior opportunity for cross-examination.

\* \* \* \*

> Our cases have thus remained faithful to the Framers' understanding: Testimonial statements of *witnesses absent from trial* have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.

541 U.S. at 53–54, 59, 124 S.Ct. 1354 (emphasis added). Additionally, the Court in *Crawford* explicitly stated in a footnote that a declarant's appearance for cross-examination at trial removes all Confrontation Clause barriers to the admission of his or her prior statements:

> Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause *places no constraints at all* on the use of his prior testimonial statements. It is therefore irrelevant that the reliability of some out-of-court statements cannot be replicated, even if the declarant testifies to the same matters in court. The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

*Id.* at 59 n. 9, 124 S.Ct. 1354 (emphasis added) (internal quotation marks and citations omitted).

We recognize that the Supreme Court's conclusion that the Confrontation Clause does not bar admission of a prior testimonial statement "so long as the declarant is present at trial to defend or explain it," *id.,* could be interpreted to require that the declarant actually defend or explain the statement. But such an interpretation both ignores the fact that the Court's "language still focuses on presence and ability to act without requiring that the record show the declarant actually did defend or explain the statement," Roger W. Kirst, *Does* Crawford *Provide a Stable Founda-*

*tion for Confrontation Doctrine?*, 71 Brook. L.Rev. 35, 76 (2005), and is at odds with the Court's more explicit assertion that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements," *Crawford*, 541 U.S. at 59 n. 9, 124 S.Ct. 1354.

 Even if the Supreme Court's language in *Crawford* were construed as not dispositive of the issue before us, our interpretation of *Crawford* is in accord with the Supreme Court's pre-*Crawford* Confrontation Clause jurisprudence. Indeed, in *California v. Green*, the Court stated that "where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The Court subsequently noted in *Delaware v. Fensterer* that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). The *Fensterer* Court concluded as follows:

> The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities

through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.

*Id.* at 21–22, 106 S.Ct. 292. Finally, in *United States v. Owens*, the Supreme Court held that the Confrontation Clause is not violated by the "admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification." 484 U.S. 554, 564, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). According to the Court, "successful cross-examination is not the constitutional guarantee." *Id.* at 560, 108 S.Ct. 838.

 We acknowledge that the Supreme Court in *Green*, 399 U.S. at 168–70, 90 S.Ct. 1930, and *Fensterer*, 474 U.S. at 20, 106 S.Ct. 292, declined to decide whether a witness's memory loss can so impede cross-examination that admission of a prior statement violates the Confrontation Clause, and that the witness in *Owens*, 484 U.S. at 556, 108 S.Ct. 838, actually remembered making his prior statement. But these cases suggest what was settled in *Crawford*—that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."[5] 541 U.S. at 59 n. 9, 124 S.Ct. 1354.

Minnesota case law also supports our interpretation of *Crawford*. In *State v. Robinson*, we concluded that the Confrontation Clause was inapplicable where the declarant "testified and was subject to cross-examination." 718 N.W.2d 400, 409 (Minn.2006). Quoting *Crawford*, we stated that " '[w]hen the declarant appears for

**5.** The Connecticut Supreme Court noted in *State v. Pierre* that the Supreme Court " 'in *Crawford* neither overruled nor called into question its two earlier decisions that addressed and resolved this issue: *Delaware v.* *Fensterer* and *United States v. Owens.*' " 277 Conn. 42, 890 A.2d 474, 500 (2006) (citations omitted) (quoting *People v. Sharp*, 355 Ill. App.3d 786, 292 Ill.Dec. 118, 825 N.E.2d 706, 711 (2005)).

cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.'" *Id.* (quoting *Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354). Although our discussion of the Confrontation Clause in *Robinson* concerned whether we could consider certain corroborating evidence for purposes of the residual hearsay exception and did not involve a witness's alleged memory loss, we placed no qualifications on the quality of cross-examination required to satisfy the Confrontation Clause. *See id.* Furthermore, in *State v. Plantin,* the Minnesota Court of Appeals ruled that the defendant's Confrontation Clause rights were not violated where "the victim testified in the presence of the jury, and [the defendant] had ample opportunity to cross-examine her about her [prior] statement." 682 N.W.2d 653, 660 (Minn.App. 2004), *rev'd denied* (Minn. Sept. 29, 2004). The court of appeals noted that the defendant "clearly was not satisfied with the victim's answers and lapses in memory, but that does not mean that he was denied his constitutional right of confrontation." *Id.*

Courts in other jurisdictions have interpreted *Crawford* in a similar manner. In *State v. Price,* for example, the Washington Supreme Court held that "when a witness is asked questions about the events at issue and about his or her prior statements, but answers that he or she is un-able to remember the charged events or the prior statements, this provides the defendant sufficient opportunity for cross-examination to satisfy the confrontation clause." 158 Wash.2d 630, 146 P.3d 1183, 1192 (2006). The court in *Price* "conclude[d] that a witness's inability to remember does not implicate *Crawford* nor foreclose admission of pretrial statements." *Id.* Likewise, in *State v. Gorman,* the Supreme Judicial Court of Maine held that the Confrontation Clause was not violated by the admission of a witness's prior statements because the defendant "was given the opportunity to examine and cross-examine [the witness] before the jury regarding what she did and did not recall and the reasons for her failure of recollection." 854 A.2d 1164, 1178 (Me. 2004). According to the *Gorman* court, *Crawford* "indicate[s] that [a declarant's appearance for cross-examination] removes any Confrontation Clause constraint on use of prior statements." *Id.* at 1176. Finally, in *State v. Pierre,* the Connecticut Supreme Court concluded "that a witness' claimed inability to remember earlier statements or the events surrounding those statements does not implicate the requirements of the confrontation clause under *Crawford,* so long as the witness appears at trial, takes an oath to testify truthfully, and answers the questions put to him or her during cross-examination."[6] 277 Conn. 42, 890 A.2d 474, 502 (2006).

---

**6.** *See also People v. Candelaria,* 107 P.3d 1080, 1087 (Colo.Ct.App.2004) ("Defense counsel had the opportunity to cross-examine [the declarant] about her statements, and [the declarant] was available for further testimony. Accordingly, there was no violation of defendant's confrontation rights. The fact that at the time of trial [the declarant] no longer recalled the statements or events does not alter this conclusion.") (citations omitted), *rev'd in part on other grounds,* 148 P.3d 178 (Colo.2006); *Mercer v. United States,* 864 A.2d 110, 113, 114 & n. 4 (D.C.2004) (concluding "that the requirements of *Crawford* were met" where the declarant, who "was unable to recall in any meaningful way" the relevant events or her prior statements, was subject to cross-examination at trial); *Johnson v. State,* 878 A.2d 422, 427, 429 (Del.2005) (ruling "that there was no denial of [the defendant's] confrontation rights" where the declarant, who could not remember making the prior statements, "took the stand and was subject to cross-examination"); *Robinson v. State,* 271 Ga.App. 584, 610 S.E.2d 194, 196–97 (2005) (concluding that "because the witnesses [who did not recall many of the facts

■ The Confrontation Clause is satisfied by a declarant's appearance at trial for cross-examination, and it is for the factfinder to evaluate a declarant's credibility. Accordingly, A.A.'s memory infirmities were exposed at trial, and the district court determined that he was not a credible witness and gave his statements "little if any weight." We hold that the admission at trial of A.A.'s prior statements did not violate appellant's Confrontation Clause rights.

## III.

■ Appellant also argues that he is entitled to a new trial because A.A.'s prior statements were inadmissible hearsay. "We afford trial courts considerable discretion in admitting evidence" and "review their evidentiary rulings for an abuse of that discretion." *State v. Martinez*, 725 N.W.2d 733, 737 (Minn.2007). "On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003). The "[e]rroneous admission of evidence that does not have constitutional implications is harmless if there is no 'reasonable possibility that the wrongfully admitted evidence significantly affected the verdict.'" *State v. Robinson*, 718 N.W.2d 400, 407 (Minn.2006) (quoting *State v. Post*, 512 N.W.2d 99, 102 n. 2 (Minn.1994)).

■ The reversal of appellant's convictions is not warranted because any error under the hearsay rules in admitting A.A.'s prior statements or the testimony of Adams and Immerman regarding those statements was harmless. The district court indicated that this evidence did not affect its verdict. The court made a conclusion of law that it "found [A.A.] lacking in credibility and gave little weight to his statements." Additionally, the court reiterated in a footnote that it "finds [A.A.] lacking in credibility and will give little if any weight to his statements." Finally, it is telling that the district court did not include in its findings of fact any information found solely in A.A.'s statements.

We note that our resolution of this case might have been different if appellant had been convicted by a jury and we thus had no indication as to what actually influenced the guilty verdict. But where appellant waived his right to a jury trial and the district court indicated that A.A.'s testimony did not affect its verdict, we hold that any error in admitting A.A.'s prior statements or the testimony of Adams and Immerman under the hearsay rules was harmless.

Because the evidence of premeditation was sufficient to support appellant's convictions for first-degree premeditated murder and attempted first-degree premedi-

---

surrounding the incident but gave responsive answers to some questions] were present at trial and testified, *Crawford* does not apply"); *State v. Fields*, 115 Hawai'i 503, 168 P.3d 955, 969 (2007) ("*Crawford*, despite its absolute rules restricting admission of an *absent* declarant's hearsay statement, leaves no room for doubt that the federal confrontation clause is not concerned with the admission of an out-of-court statement where the declarant *appears at trial and is cross-examined about that statement.*"); *State v. Tester*, 179 Vt. 627, 895 A.2d 215, 220, 221 n. 2 (2006) ("*Crawford*

is inapposite because [the declarant claiming partial memory loss] testified at trial."); *State v. Rockette*, 294 Wis.2d 611, 718 N.W.2d 269, 277 (2006) ("[W]e hold that a witness's claimed inability to remember earlier statements or the events surrounding those statements does not implicate the requirements of the Confrontation Clause under *Crawford*, so long as the witness is present at trial, takes an oath to testify truthfully, and answers the questions put to him or her during cross-examination.").

tated murder, the admission at trial of A.A.'s prior statements did not violate appellant's Confrontation Clause rights, and any error in admitting A.A.'s prior statements or the testimony of other witnesses regarding those statements under the hearsay rules was harmless, we affirm appellant's convictions.

Affirmed.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.