*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2206**

State of Minnesota,
Respondent,

vs.

Sherwin Jerome Thurman,
Appellant.

**Filed February 2, 2015
Affirmed
Ross, Judge**

Olmsted County District Court
File No. 55-CR-10-9128

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, Minnesota; and

Debra K. Kovats, Special Assistant Public Defender, St. Louis Park, Minnesota (for appellant)

        Considered and decided by Ross, Presiding Judge; Smith, Judge; and Harten,

Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**ROSS**, Judge

A police informant entered a car in which Sherwin Thurman and Damien Hodges were sitting and waiting for him so they could sell him an ounce of powder cocaine for $1,100. After the informant produced the cash, Thurman handed the cocaine to Hodges, who in turn handed it to the informant. The district court found Thurman guilty of aiding and abetting first-degree sale of a controlled substance. Thurman appeals, arguing that the district court improperly denied his pretrial motion to cross-examine the informant about a prior supposed bribery scheme and improperly convicted him on insufficient evidence. The district court acted within its discretion by restricting the cross-examination and it rested its conviction on sufficient evidence. We therefore affirm.

## FACTS

A drugs-for-cash transaction occurred inside a Ford Expedition parked outside a Rochester shopping mall in September 2010. A police informant had just entered the parked Ford where Sherwin Thurman and Damien Hodges were waiting. The informant had arranged to meet Hodges there and to buy an ounce of cocaine from him for $1,100.

A police surveillance camera captured the exchange only from outside the Ford. Hodges and Thurman were sitting in the front seats. The informant entered and sat behind them. He wore a recording device that captured a two-minute conversation. The men mostly chatted about a puppy that the informant brought with him. No one specifically discussed the drug transaction. But the recording captured muffled sounds consistent with someone leafing through paper currency. And at one point, the informant suggested that

Hodges could obtain a puppy in exchange for "a ball," which is a slang term referring to a quantity of cocaine.

According to the informant's later description, the informant produced the cash and Thurman removed a bag of cocaine from his pants and handed it to Hodges, who in turn passed it to the informant. After that exchange, Hodges gave Thurman a small rock of cocaine, which Thurman kept. This pass-through exchange is consistent with experienced drug dealing; the informant explained that drug dealers commonly recruit conduits to handle drugs in this manner to screen the dealers from culpability if they encounter police.

The state charged Thurman and Hodges for their involvement in the drug transaction. Hodges entered a plea agreement and testified at Thurman's trial. Hodges and Thurman, who are friends, both asserted at trial that Thurman was oblivious to the transaction. The two men each testified that Thurman had done yard work for Hodges's girlfriend earlier that day, but their details were inconsistent. Hodges testified that he was unwilling to leave Thurman alone when he went to meet the informant, so he invited Thurman along. He asserted that he discretely slid the drugs to the informant, leaving Thurman unaware of the illegal exchange. He also asserted that no one counted any money and that it was in a roll that he quickly stuffed into his pocket. Thurman testified that, although he knew that the informant was a drug dealer and that he "had an idea of what might have happened," he was focused on the informant's puppy, so he never noticed the drug deal.

In addition to relying on his own and Hodges's testimony that Thurman was oblivious to the drug deal, Thurman challenged the informant's credibility. He sought to cross-examine him about an unrelated incident in which the informant allegedly offered to withhold testimony in exchange for money. Thurman based the allegation on an inference from a 2011 text-message conversation between the informant and the target of a different drug investigation. The district court judge read a transcript of the text conversation and the informant's admission that, while he was pretending to be someone else, he told the subject of that unrelated investigation that he "had contacted him and said that he would not testify . . . in exchange for money." But the informant had told police that he was "just fooling around" and that he was not seriously attempting to obtain cash for not testifying. The district court credited the police conclusion that the informant had merely been joking with the other person, and it did not allow Thurman to inquire about the conversation during the trial. The court cited the risk of distraction about a collateral matter and "the possibility of unfair prejudice." The district court did admit other evidence adverse to the informant's credibility, including his prior convictions and testimony revealing his bias. And it allowed Thurman to question him about inconsistencies between his trial testimony and his statements to police.

The district court found Thurman guilty of aiding and abetting first-degree sale of a controlled substance and imposed a 60-month prison sentence. Thurman appeals.

## DECISION

Thurman argues that the district court abused its discretion by prohibiting him from cross-examining the informant about the informant's alleged money-for-

4

withholding-testimony scheme. He also argues that because the informant's testimony about the drug transaction was not credible, the state did not introduce sufficient evidence to convict him. Neither argument persuades us to reverse.

**I**

Thurman argues unconvincingly that the district court's refusal to allow him to question the informant about his text-message conversation in the unrelated case requires reversal. We will not reverse a conviction based on the district court's evidentiary rulings unless the ruling exhibits an abuse of discretion that prejudiced the defendant. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). The district court has discretion to allow a defendant to cross-examine a witness about specific incidents that bear on the witness's truthfulness. Minn. R. Evid. 608(b). The district court exercises this discretion appropriately by balancing the probative value of the expected testimony against the risks of delay and confusion. *State v. Haney*, 219 Minn. 518, 520, 18 N.W.2d 315, 316 (1945). The district court undertook that balancing inquiry here. It examined the police report and decided that the bribery theory—which rested on a single line of ambiguous text—was "too thin." It saw nothing in the text-message evidence to clearly indicate that the informant had actually solicited money to refuse to testify in the unrelated case. And it balanced this thin evidence of the informant's alleged untruthfulness against the risks of unfairly prejudicing the state and becoming sidetracked on a collateral matter. This is the sort of balancing the rule encourages, and we have no reason to question the district court's reasoned assessment here.

5

Not only has Thurman failed to show that the district court improperly exercised its discretion, he also has not shown prejudice. Thurman agreed to a bench trial, and the transcript reflects that the trial judge, who sat as fact finder, was fully informed about the legitimate bases for impeachment. We have no reason to conclude that allowing Thurman to cross-examine the informant to attempt to reveal that the informant tried to secure a bribe would have influenced the trial in Thurman's favor.

## II

Thurman also argues that the state failed to offer sufficient evidence to prove him guilty of drug dealing. We determine whether the evidence was sufficient by thoroughly reviewing the record evidence in the light most favorable to the verdict. *State v. Thomas*, 590 N.W.2d 755, 757 (Minn. 1999). We will uphold the verdict if the evidence would allow a reasonable fact finder to find the defendant guilty beyond a reasonable doubt. *Id.* at 757–58.

Thurman's evidence-sufficiency challenge is weak. The state introduced direct evidence of Thurman's guilt in the form of the informant's specific testimony that Thurman handed Hodges the cocaine and that Hodges handed the cocaine to the informant in a cash exchange. He also testified that Hodges gave Thurman a rock of cocaine in apparent payment for his conduit services. The testimony of a single witness, even if uncorroborated, can sustain a conviction. *State v. Bliss*, 457 N.W.2d 385, 390 (Minn. 1990). And the fact finder alone evaluates witness credibility. *State v. Holliday*, 745 N.W.2d 556, 568 (Minn. 2008). Although Thurman and Hodges both testified that Thurman was the unwitting and oblivious passenger in a car in which only Hodges and

6

the informant were aware of the drug transaction, the district court found that Thurman's and Hodges's testimony lacked credibility. The finding itself is enough for us to rely on it because the district court is in a much better position than we are to assess credibility. But the district court also reasonably explained its finding. The audio recording indicates that Thurman conversed with the informant in the car, making it unlikely that Thurman was so detached from his surroundings that he entirely missed the passing of $1,100 in cash in exchange for a bag of cocaine. The recording reveals that one of the car's three occupants counted the cash openly, bill by bill, inside the car. The district court reasonably doubted that the deal occurred without Thurman's notice. In addition to finding Hodges's and Thurman's testimony incredible, it specifically found the informant's testimony credible.

Given the substance of the informant's credible testimony and the district court's rejection of Thurman's testimony, we necessarily hold that sufficient evidence supports the conviction. Thurman's separate arguments in his supplemental brief are not supported and warrant no discussion.

**Affirmed.**

7