*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1317**

State of Minnesota,
Respondent,

vs.

Michael Anthony Clark,
Appellant.

**Filed August 15, 2016
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-15-2675

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his conviction of third-degree criminal sexual conduct, arguing that the district court violated his Fifth Amendment right against self-incrimination by admitting evidence of his prearrest silence and erroneously excluded evidence of the victim's previous sexual conduct with him. Appellant also argues pro se that the court erred by denying his motion to suppress DNA evidence obtained under a search warrant. We affirm.

## FACTS

Appellant Michael Anthony Clark attended elementary and middle school with K.J. and D.W., and Clark and K.J. reconnected years later in December 2013. At that time, Clark lived with K.P., with whom he had one child; K.J. lived with D.W., with whom he had a nine-year-old son, L.K.[1] On February 15, 2014, Clark, K.P., and their child went to K.J. and D.W.'s apartment for a get-together that included cooking, playing dice, drinking, dancing, and playing between the children. K.J. drank heavily and eventually passed out in the living room; he did not remember anything from the time he passed out until he awoke the following morning. D.W. consumed about eight or nine shots of brandy. Around midnight, D.W. accompanied Clark, K.P., and their child out of the apartment building. D.W. then returned to her apartment, feeling "[r]eally drunk" and "dizzy, unbalanced and

---

[1] "L.K." is an abbreviation of the child's nickname, which we use for clarity because L.K.'s initials are the same as his father's.

. . . tired." She entered her bedroom and closed the door, removed her pants, and went to bed wearing a tank top, bra, and panties.

After D.W. went to bed, L.K. heard the doorbell ring and responded because he could not wake D.W. or K.J. L.K. saw Clark, who told L.K. that he was looking for his charger; L.K. let Clark into the apartment, and Clark went straight into D.W.'s bedroom and closed the door. After about five minutes, L.K. went into D.W.'s bedroom and saw Clark pull the covers over D.W., who was asleep. Clark told L.K. to go back into his bedroom, which L.K. did. At some point, D.W. awoke to find a man standing beside her bed and rubbing her upper thigh. The man appeared to be wearing some of the same clothes that Clark wore earlier in the evening. D.W. asked, "'Mike, is that you?'" The man did not respond. After "maybe a minute," D.W. fell asleep again. When D.W. awoke the next morning, she immediately remembered the man in her bedroom and noticed that her panties were on the floor near where the man had been standing. D.W. felt "throbbing" and "soreness" and had "leakage" in her vaginal area. Based on those sensations, she "knew [she] had been sexually penetrated."

D.W. reported the incident to police on February 17, 2014, and an officer interviewed D.W., K.J., and L.K. and collected D.W.'s tank top, bra, and panties. A nurse performed a sexual-assault examination of D.W, which included swabs of D.W.'s internal and external genitalia. Police obtained a search warrant and collected a saliva sample from Clark. A male DNA profile was found on D.W.'s genital swabs; Clark's DNA matched the male DNA profile, while K.J. was excluded as a contributor to the profile.

Respondent State of Minnesota charged Clark with third-degree criminal sexual conduct (sexual penetration with physically helpless complainant). The case proceeded to a jury trial, and after jury selection, the district court granted Clark's petition to proceed pro se and discharged his public defender. The jury rejected Clark's consent defense and found him guilty of third-degree criminal sexual conduct, and the court sentenced Clark to 117 months' imprisonment.

This appeal follows.

**D E C I S I O N**

*Clark's prearrest silence*

Detective Mike Lutz testified at trial that he left Clark a voicemail on March 18, 2014, asking Clark to return his call. When Clark did not respond, Detective Lutz again called Clark on April 30 and reached him. The district court allowed the state to play a recording of the call for the jury and admitted the recording into evidence. Clark objected to admission of the recording and Detective Lutz's testimony on Fifth Amendment and relevance grounds. The recording relays the following:

> DETECTIVE LUTZ: Hi. Uh, I'm trying to contact Michael Clark.
> CLARK: Yes. This is Michael Clark.
> DETECTIVE LUTZ: Mr. Clark, my name is Mike Lutz. I am a detective with the Edina Police Department. Um, I would like to have gotten to this matter earlier, but uh I just wasn't able to get to it because of other things. That being said, um our department took a complaint um, in regard uh, to you and a uh [D.W.]. A [D.W.].
>
> (Dial tone indicating that the call was disconnected.)

4

Detective Lutz testified that he immediately called Clark again and received Clark's voicemail. Clark argues that the recording reflects that he "unequivocally invoked his Fifth Amendment right to silence," that admission of the recording and Detective Lutz's testimony violated his Fifth Amendment right against self-incrimination, and that we therefore must reverse his conviction and grant him a new trial.

In *State v. Borg*, a case of first impression, a police officer sent a letter to the defendant, then an uncharged, noncustodial suspect, which read:

> I would like to speak with you regarding an investigation that I am conducting. When I spoke with you briefly [previously], you indicated that you had hired an attorney to represent you.
>
> Please have your attorney contact me as soon as possible to arrange an interview appointment. Thank you very much.

806 N.W.2d 535, 539 (Minn. 2011) (quotation omitted). During the state's case in chief, the officer testified that he did not receive a response to the letter. *Id.* at 540. A jury found the defendant guilty of third-degree criminal sexual conduct, and the defendant appealed his conviction, arguing that admission of evidence of his prearrest silence violated his Fifth Amendment right against self-incrimination. *Id.* at 537, 541. The supreme court disagreed, stating:

> The letter is not questioning, and the letter compels nothing. The letter is what [the officer] testified it was: a written attempt to interview [the defendant]. [The defendant]'s voluntary decision not to respond to the letter, assuming he received it, raises no issue under the Fifth Amendment. We conclude that the privilege against compelled self-incrimination did not prevent the State from presenting evidence during the State's case in chief of [the defendant]'s failure to respond to the letter.

5

*Id.* at 543. The court held that "if a defendant's silence is not in response to a choice compelled by the government to speak or remain silent, then testimony about the defendant's silence presents a routine evidentiary question that turns on the probative significance of that evidence." *Id.* (quotation omitted).

Clark acknowledges the holding in *Borg* but argues that *Salinas v. Texas*, 133 S. Ct. 2174 (2013), abrogated *Borg*. According to Clark, "the relevant inquiry has changed from the 'compulsion' inquiry of *Borg* to the 'invocation' inquiry of the *Salinas* plurality." We disagree. In *Salinas*, the United States Supreme Court granted certiorari "to resolve a division of authority in the lower courts over whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief." 133 S. Ct. at 2179 (plurality opinion). But the Court did not resolve that issue. *Id.* A three-justice plurality concluded that the defendant failed to invoke his Fifth Amendment right against self-incrimination during his interview and stated that the Court "ha[s] long held that a witness who desires the protection of the privilege must claim it at the time he relies on it." *Id.* (quotations omitted). Two concurring justices did not join the plurality's opinion, instead concluding that "[the defendant's] claim would fail even if he had invoked the privilege because the prosecutor's comments regarding his precustodial silence did not compel him to give self-incriminating testimony." *Id.* at 2184 (Thomas, J., concurring). And four justices dissented, pointing to cases in which the Court has held that "an individual, when silent, need not expressly

6

invoke the Fifth Amendment if there are inherently compelling pressures not to do so." *Id.* at 2185, 2188 (Breyer, J., dissenting) (quotation omitted).

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 993 (1977) (quotation omitted). Because *Salinas* lacks a single rationale supported by a majority of the Justices, *Borg* remains binding authority for us. *See State v. Allinder*, 746 N.W.2d 923, 925 (Minn. App. 2008) (stating that "this court is bound to follow supreme court precedent"). Based on *Borg*, we conclude that the district court's admission of evidence of Clark's prearrest silence during the state's case in chief did not violate his Fifth Amendment right against self-incrimination.[2]

Under the supreme court's holding in *Borg*, the admissibility of Detective Lutz's testimony and the recording of the call presents "a routine evidentiary question that turns on the probative significance of that evidence." *Borg*, 806 N.W.2d at 543 (quotation omitted). "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion." *State v. Carridine*, 812 N.W.2d 130,

---

[2] Because Clark does not invoke the Minnesota Constitution, we do not consider whether admission of the evidence of Clark's prearrest silence violated his right against self-incrimination under the Minnesota Constitution. *See* Minn. Const. art. 1, § 7 ("No person shall . . . be compelled in any criminal case to be a witness against himself . . . ."); *State v. Johnson*, 811 N.W.2d 136, 146 n.2 (Minn. App. 2012) (addressing only Fifth Amendment when appellant mentioned article I, section 7, of Minnesota Constitution in his brief but based arguments only on Fifth Amendment), *review denied* (Minn. Mar. 28, 2012).

141 (Minn. 2012) (quotation omitted). "[T]he appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *State v. Holliday*, 745 N.W.2d 556, 568 (Minn. 2008) (quotation omitted). Here, Borg presents no argument based on evidentiary rather than constitutional grounds that the district court abused its discretion by admitting evidence of Clark's prearrest silence. We therefore conclude that Borg has failed to establish a clear abuse of discretion in the admission of that evidence.

*D.W.'s previous sexual conduct*

Clark argues that the district court erroneously excluded evidence of previous sexual conduct between Clark and D.W. "Due process requires that every defendant be afforded a meaningful opportunity to present a complete defense." *State v. Richardson*, 670 N.W.2d 267, 277 (Minn. 2003) (quotations omitted). But "[t]he right to present a defense is not without limitations." *Id.* "[B]oth the accused and the state must comply with procedural and evidentiary rules designed to ensure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* (quotation omitted). "Evidentiary rulings are reviewed for an abuse of discretion, even when a constitutional violation is alleged." *State v. Wenthe*, 865 N.W.2d 293, 306 (Minn. 2015).

Minnesota's rape-shield law provides that, in a prosecution for criminal sexual conduct, "evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury." Minn. Stat. § 609.347, subd. 3 (2012); Minn. R. Evid. 412(1). Such evidence may be admissible when the consent of the victim is a defense in the case. Minn. Stat. § 609.347, subd. 3; Minn. R. Evid. 412(1).

But the evidence can be admitted only if its probative value is not substantially outweighed by its inflammatory or prejudicial nature. Minn. Stat. § 609.347, subd. 3; Minn. R. Evid. 412(1).

Under the rape-shield law, a defendant may not offer evidence of the victim's previous sexual conduct except according to a specified procedure. Minn. Stat. § 609.347, subd. 4 (2012); Minn. R. Evid. 412(2). The defendant must bring a motion setting forth an offer of proof of the evidence that he intends to offer "at least three business days prior to trial, unless later for good cause shown." Minn. Stat. § 609.347, subd. 4(a). If the district court deems the defendant's offer of proof to be sufficient, the court must order a hearing outside the presence of the jury to allow the defendant to make a full presentation of the offer of proof. Minn. Stat. § 609.347, subd. 4(b); Minn. R. Evid. 412(2)(B). After the hearing, if the court determines that the offered evidence is admissible under one of the exceptions in the rape-shield law and that the probative value of the evidence is not substantially outweighed by its inflammatory or prejudicial nature, the court must issue an order stating the extent to which the evidence is admissible. Minn. Stat. § 609.347, subd. 4(c); Minn. R. Evid. 412(2)(C).

In this case, on the second day of trial and following D.W.'s testimony, Clark gave notice of his intent to testify that he and D.W. engaged in sexual conduct together when they were in middle school and again in 2000. The district court treated this notice as a motion to admit otherwise-inadmissible evidence under an exception in the rape-shield law. Regarding the evidence of sexual conduct between Clark and D.W. when they were in middle school, the court said, "I wouldn't let that in. It's too remote to this instance to

9

be relevant on the issue of present consent." And as to the evidence of sexual conduct between Clark and D.W. in 2000, the court said, "I'm also going to deny that motion for both reasons—*lack of notice pretrial* and because I think it's too remote to be relevant on the issue of consent under Rule 412." (Emphasis added.) Clark nevertheless argues that "[t]he court affirmatively did not exclude the evidence [of previous sexual conduct between Clark and D.W.] because of any timing problems with when it was offered."[3] Clark is wrong. The court prohibited Clark from introducing the evidence both because he failed to provide the required pretrial notice and because the instances of previous sexual conduct were "too remote" to be relevant to this case. The court neither disclaimed reliance on the

---

[3] Clark bases his argument on the following statements in the court's written order after its ruling on the record:

> [Clark] . . . presented his motion three days *into* trial. Although precedent would support denying [Clark]'s request on procedural grounds, *this Court is reluctant to deny a defendant's motion based solely on his ignorance of procedure.* In the interest of protecting [Clark]'s constitutional rights, the Court assessed the motion in a light most favorable to [Clark], and opines that denial of the motion is appropriate, irrespective of timeliness. [Clark] moved to present evidence of a sexual relationship between himself and [D.W.] eighteen years ago and again fourteen years ago. Although evidence of a sexual relationship between [Clark] and [D.W.] may be probative, the Court finds the alleged encounters too remote in time. There is limited probative value in offering evidence of a prior sexual history between [Clark] and [D.W.] to demonstrate consent, more than a decade later.

(Second emphasis added.)

10

untimely notice as a basis for denying Clark's "motion" nor found good cause for the untimeliness of the notice. The court merely noted its reluctance to deny Clark's motion solely on the basis of the untimely notice.

As to the substantive admissibility of the evidence of previous sexual conduct between Clark and D.W., the district court stated in its order that "in a physically helpless case consent is not an issue" and therefore "the existence of a prior relationship is not relevant." Under Minnesota law, "[a] person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if . . . the actor knows or has reason to know that the complainant is . . . physically helpless." Minn. Stat. § 609.344, subd. 1 (2012). "'Physically helpless' means that a person is (a) asleep or not conscious, (b) unable to withhold consent or to withdraw consent because of a physical condition, or (c) unable to communicate nonconsent and the condition is known or reasonably should have been known to the actor." Minn. Stat. § 609.341, subd. 9 (2012). Because the definition of "physically helpless" includes a complainant's inability to withhold or withdraw consent or communicate nonconsent, the district court erred in concluding that D.W.'s alleged consent was irrelevant to the charges in this case. *See State v. Berrios*, 788 N.W.2d 135, 141–43 (Minn. App. 2010) (acknowledging by implication relevance of victim's alleged consent in challenge to sufficiency of evidence to support conviction of third-degree criminal sexual conduct (physically helpless complainant)), *review denied* (Minn. Nov. 16, 2010).

But even if evidence of previous sexual conduct between Clark and D.W. was relevant, the evidence was admissible "only if the probative value of the evidence [wa]s

11

not substantially outweighed by its inflammatory or prejudicial nature." Minn. Stat. § 609.347, subd. 3; Minn. R. Evid. 412(1). In its order, the district court stated:

> To assume that [D.W.]'s consent to sexual encounters eighteen and fourteen years ago would show her propensity to engage in a sexual relationship with [Clark] in February 2014, would be placing a great burden on a jury to assess the varying degrees of human nature. Such evidence would be highly prejudicial to [D.W.]'s right to deny a sexual partner at the age of thirty-two. The Court does not believe these instances would provide the jury with any information conducive to their fact-finding inquiry. The prior relationship, if true, occurred half a lifetime ago for [Clark] and [D.W.]. Youthful indiscretions long before motherhood, adulthood, and a long term monogamous relationship are of limited probative value fourteen and eighteen years later.

The court clearly determined that the probative value of the evidence of previous sexual conduct between Clark and D.W. was substantially outweighed by the evidence's inflammatory or prejudicial impact. We review the district court's evidentiary ruling for an abuse of discretion. *Wenthe*, 865 N.W.2d at 306. Due to the length of time between Clark and D.W.'s purported previous sexual conduct and the date of the offense in this case, we conclude that the district court did not abuse its discretion by ruling that the evidence of previous sexual conduct between Clark and D.W. was inadmissible.

*Search warrant*

In an application for a search warrant for a sample of Clark's saliva, Detective Lutz related facts gained through another officer's interviews of D.W., K.J., and L.K. Two days before trial, Clark moved to suppress any DNA evidence obtained as a result of the search warrant, arguing that the application contained "reckless misrepresentations of fact material to the findings of probable cause." The district court denied the motion. In a pro

se supplemental brief, Clark argues that the court erred by denying his suppression motion. Specifically, Clark complains that some of L.K.'s statements during his interview with police were contradictory, revealed improper involvement of D.W. in the interview, and indicated that L.K. did not observe the interactions between Clark and D.W. in D.W.'s bedroom. Clark contends that Detective Lutz made materially false statements in reckless disregard for the truth by relying on L.K.'s statements in the application. Clark further contends that, without L.K.'s statements, the application was insufficient to support probable cause for the search warrant.

Clark cites no legal authority in his pro se supplemental brief, and we therefore may decline to consider his claim of error regarding the denial of his suppression motion. *See State v. Taylor*, 869 N.W.2d 1, 22 (Minn. 2015) ("We deem arguments waived on appeal if a pro se supplemental brief contains no argument or citation to legal authority in support of the allegations." (quotation omitted)). But if prejudicial error is obvious on mere inspection of the record, we may consider an unsupported allegation of error. *Id.* Here, prejudicial error is not obvious on mere inspection of L.K.'s interview statements and Detective Lutz's search-warrant application. We conclude that the district court did not clearly err by finding that the search-warrant application did not include statements that were knowingly and intentionally false or made with reckless disregard for the truth. *See State v. Andersen*, 784 N.W.2d 320, 326–27 (Minn. 2010) (reviewing validity of search warrant and stating that "the clearly erroneous standard controls our review of a district

13

court's findings on the issue of whether the affiant deliberately made statements that were false or in reckless disregard of the truth").

**Affirmed.**