**STATE of Minnesota, Respondent,**

v.

**Matthew James HARRINGTON, Appellant (C3–92–2556),**

**Mary Lynn Friberg, Appellant (C5–92–2557).**

Nos. C3–92–2556, C5–92–2557.

Court of Appeals of Minnesota.

Aug. 3, 1993.

Review Denied Sept. 30, 1993.

Hubert H. Humphrey, III, Atty. Gen., Jerome P. Filla, John Michael Miller, Peterson, Fram & Bergman, St. Paul, for respondent.

Thomas W. Strahan, Minneapolis, for appellants.

Considered and decided by PARKER, P.J., and FORSBERG and SCHULTZ,* JJ.

## OPINION

HAROLD W. SCHULTZ, Acting Judge.

Matthew Harrington and Mary Friberg challenge their convictions for violating a restraining order issued under the Minnesota harassment statute, Minn.Stat. § 609.-748, subd. 5 (1990). We affirm.

## FACTS

Between March 17 and July 17, 1990, appellants Matthew Harrington and Mary Friberg and other anti-abortion protesters picketed outside Jeri Rasmussen's home, carrying anti-abortion placards, shouting at Rasmussen, and causing Rasmussen to fear for her safety. Following approximately eight such incidents, Rasmussen, who is the director of a clinic providing abortion services, obtained an order restraining appellants Matthew Harrington and Mary Friberg from "picketing in front of the specific residence of Jeri Rasmussen." *See* Minn.Stat. § 609.748, subd. 5 (1990) (Anti–Harassment Law). The order incorporated a detailed memorandum in which the court determined appellants' conduct constituted "target picketing," and, therefore, the restraining order did not unconstitutionally infringe upon their First Amendment rights to free speech. *See*

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

*Frisby v. Schultz,* 487 U.S. 474, 486–88, 108 S.Ct. 2495, 2503–04, 101 L.Ed.2d 420 (1988). Appellants did not appeal the issuance of this restraining order.

On March 7, 1992, Friberg joined a group of between 6 to 12 protestors picketing outside Rasmussen's home. Rasmussen recognized Friberg, who was standing in front of the house carrying a placard that stated, "Adoption is a loving solution." Rasmussen saw Friberg walk on the street past her home, past several neighboring homes, turn, and walk past Rasmussen's home again. At some point, Friberg also told Rasmussen, "Don't kill babies."

When local authorities arrived, Rasmussen directed a deputy to Friberg. The deputy saw Friberg passing on the street in front of Rasmussen's driveway and advised her of the restraining order. Friberg acknowledged the existence of the order, but indicated that her conduct did not violate the order. The deputy took Friberg to the Ramsey County Sheriff's station but, upon the advice of the Shoreview City Attorney, did not charge Friberg. After the deputy brought Friberg back to her car near the Rasmussen neighborhood, she rejoined the protestors and eventually left at about 3:00 p.m. Thereafter, authorities charged Friberg and she was convicted of violating the restraining order. *See* Minn.Stat. § 609.-748, subd. 6(a) (1990).

On March 14, 1992, Harrington participated in a similar protest in the Rasmussen neighborhood. The stipulated facts indicate that Harrington walked on the street past Rasmussen's home carrying a placard depicting a baby in the womb and stating "something about a week old." Harrington was also convicted of violating the restraining order. *See id.* Both Friberg and Harrington appealed and this court ordered their appeals consolidated.

### ISSUES

I. May appellants attack the validity of the underlying restraining order?

II. Do appellants' convictions violate the ex post facto clause of the Minnesota Constitution?

III. Is the evidence sufficient to support the convictions?

### ANALYSIS

#### I. *Restraining Order*

Appellants characterize this case as an appeal from criminal contempt convictions. The original complaints charged appellants with constructive contempt in violation of Minn.Stat. § 518B.01, subd. 14 (1990) (Domestic Abuse Act provision for violation of an order for protection). Thereafter, however, the prosecutor amended the charges to allege a violation of a restraining order under Minn.Stat. § 609.748 (1990) (Anti-Harassment Law). Under this section, violation of a restraining order is a misdemeanor. Minn.Stat. § 609.748, subd. 6(a). Unlike the domestic abuse statute, the harassment statute makes no mention of a contempt sanction. *Compare* Minn.Stat. § 518B.01, subd. 14(c) (violation of order for protection shall also constitute contempt of court) *with* Minn.Stat. § 609.748. In addition, the trial court found appellants guilty of violating a restraining order in "violation of Minnesota Statute Section 609.748, subd. 5." Neither the trial court's findings nor its incorporated memorandum make any reference to criminal contempt. Thus, appellants challenge their convictions for statutory violations, rather than for criminal contempt.

Appellants apparently characterize their convictions as criminal contempt under the assumption that we may redetermine the "validity" of the underlying order.[1] *See River Towers Ass'n v. McCarthy,* 482 N.W.2d 800, 803 (Minn.App.1992), *pet. for rev. denied* (Minn. May 21, 1992). As this case involves a statutory violation, we apply the traditional rules of appellate procedure.

---

1. We express no opinion regarding appellants' argument on the expanded scope of review in criminal contempt proceedings.

■ Following issuance of a restraining order, the restrained party has an appeal time of 30 days from service of written notice of the order. Minn.R.Civ.App.P. 104.01. Appellants did not appeal the validity of the order, and thus are precluded from attacking it in this subsequent action. *See Loram Maintenance of Way, Inc. v. Consolidated Rail Corp.*, 354 N.W.2d 111, 113 (Minn.App.1984) (party who fails to appeal is bound by decision), *pet. for rev. denied* (Minn. Jan. 11, 1985). The constitutional validity of the restraining order stands as law of the case. *See Minnesota Vikings Football Club, Inc. v. Metropolitan Council*, 289 N.W.2d 426, 431 (Minn. 1979). Thus, we will not consider appellants' claims that the restraining order is vague, overbroad, or that it violates their First Amendment rights to free speech.

## II. *Ex Post Facto*

Appellants argue their convictions for violating the restraining order offend the state constitutional prohibition against ex post facto laws. Appellants claim the restraining order was improperly based upon conduct occurring before the effective date of the Anti–Harassment Law.

The Minnesota Constitution provides:

No bill of attainder, ex post facto law, or any law impairing the obligation of contracts shall be passed, and no conviction shall work corruption of blood or forfeiture of estate.

Minn. Const. art. I, § 11. Most Minnesota cases addressing ex post facto questions involve the nearly identical clause in the federal Constitution. *See* U.S. Const. art. I, § 9. Our supreme court has distinguished, but has not explained, the difference between the two ex post facto clauses. *See State v. Moon*, 463 N.W.2d 517, 521 (Minn.1990) (applying federal ex post facto analysis but reserving interpretation of state Constitution ex post facto clause). In this case, however, we find analysis of the federal ex post facto clause instructive.

■ An ex post facto law "renders an act punishable in a manner in which it was not punishable when it was committed." *Starkweather v. Blair*, 245 Minn. 371, 386,

71 N.W.2d 869, 879 (1955). A law is considered ex post facto when it (1) applies to "events occurring before its enactment" and (2) "disadvantage[s] the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) *quoted in Moon*, 463 N.W.2d at 521.

■ The Anti–Harassment Law became effective on August 1, 1990. 1990 Minn. Laws ch. 461, § 6. Rasmussen based her petition for the restraining order upon appellants' conduct between March 17 and July 17, 1990. Although the restraining order was *based* upon events occurring before enactment of Minn.Stat. § 609.748, the restraining order did not *apply* to events occurring before the enactment. Rather, it applied to appellants' future conduct. Moreover, appellants were not convicted for conduct occurring before the statute's effective date. Instead, appellants were convicted for conduct occurring in 1992, well *after* the effective date of the statute. We conclude appellants' convictions for violating the restraining order do not offend the ex post facto clause of our state Constitution because the convictions arose from conduct occurring long after the statutory effective date. *See Samuels v. McCurdy*, 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed. 568 (1925) (no ex post facto violation where defendant convicted for possessing liquor which he had obtained before and held continuously through enactment of prohibition law); *State v. Willis*, 332 N.W.2d 180 (Minn.1983) (use of prior convictions to increase punishment for offense committed after statutory effective date does not violate ex post facto clause); *State v. Howard*, 360 N.W.2d 637 (Minn.App.1985) (no ex post facto violation where defendant prosecuted for post-enactment conduct even though conduct began before enactment and was continuous).

## III. *Sufficiency of the Evidence*

Appellants next argue the evidence is insufficient to sustain their convictions because they did not engage in target picketing, as a matter of law. We disagree.

Appellants also contend the court erred in failing to make specific findings on invasion of residential privacy, Rasmussen's status as a captive audience, and alternative channels of communication.

In reviewing a criminal conviction to determine whether the evidence supports the verdict, we examine the record to determine whether the fact finder could reasonably conclude the defendant was guilty of the charged offense. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We will assume the fact finder believed the evidence that is consistent with guilt. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Minn.Stat. § 609.748, subd. 6(a) provides that

[w]hen a temporary restraining order or a restraining order is granted under [section 609.748] and the respondent knows of the order, violation of the order is a misdemeanor.

We observe no statutory requirement that a trial court make findings as to invasion of privacy, a captive audience, or alternative channels of communication. These issues go to appellants' constitutional challenges, which are not properly before us. Appellants do not contest their knowledge of the restraining order. Thus, the only issue concerns whether appellants violated the terms of the restraining order.

In *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), the Supreme Court held that the First Amendment does not prohibit narrowly tailored regulations on so-called target picketing. The Court defined target picketing as picketing narrowly directed at a household rather than the public, and "taking place solely in front of a particular residence." *Id.* at 483, 108 S.Ct. at 2502. Moreover, the Court noted that target picketers "generally do not seek to disseminate a message to the general public, but to intrude upon the targeted resident." *Id.* at 486, 108 S.Ct. at 2503.

We conclude the evidence supports the finding that appellants engaged in target picketing of Rasmussen's home in violation of the restraining order. Appellants have a history of target picketing Rasmussen's home. Indeed, the evidence certainly supports the inference that "but for" the presence of Rasmussen's home, appellants would not be picketing in that neighborhood. The restraining order prohibited appellants from "picketing in front of the specific residence of Jeri Rasmussen." Rasmussen's neighborhood consists of approximately eight residential homes on each side of a short street. Appellants passed in front of Rasmussen's home as they picketed. They carried anti-abortion placards, and Friberg called to Rasmussen, saying, "Don't kill babies." Appellants' conduct was clearly aimed at Rasmussen, rather than the general public. We believe the evidence provides ample support for the trial court's finding that appellants' picketing was targeted at Rasmussen in violation of the restraining order, even though they also walked past a few other homes. Accordingly, we affirm appellants' convictions.

## DECISION

We will not consider appellants' constitutional challenges to the restraining order issued under Minn.Stat. § 609.748 (1990) because these arguments are not properly before us. Appellants' convictions arise from conduct occurring after the enactment of section 609.789 and do not offend the state constitutional prohibition against ex post facto laws. The evidence supports the finding that appellants engaged in target picketing in violation of the restraining order.

**Affirmed.**