**STATE of Minnesota, Respondent,**

v.

**Jeffrey Jack ROMINE, Appellant.**

**No. A07–1244.**

Court of Appeals of Minnesota.

Dec. 9, 2008.

886

Lori Swanson, Attorney General, St. Paul, MN and William L. Bernard, Grannis & Hauge, P.A., Eagan, MN, for respondent.

Jill Clark, Golden Valley, MN, for appellant.

Considered and decided by JOHNSON, Presiding Judge; ROSS, Judge; and LARKIN, Judge.

## OPINION

JOHNSON, Judge.

A Dakota County jury found Jeffrey Jack Romine guilty of violating an order for protection (OFP). On appeal, Romine argues that the OFP and provisions in chapter 518B of the Minnesota Statutes are unconstitutionally overbroad and vague, that the district court erred by ordering the forfeiture and destruction of his firearms as part of his sentence, and that a variety of alleged procedural errors require a new trial. We conclude that Romine cannot, in this case, collaterally attack the issuance of the underlying OFP or the statutes on which the OFP was based and that there was no procedural error during trial that requires a new trial. We conclude, however, that there is no statutory authority for the district court to impose a sentence requiring the forfeiture and destruction of Romine's firearms. Therefore, we affirm in part, reverse in part, and remand for resentencing.

## FACTS

In early September 2004, A.A. sought an OFP against Romine, her estranged husband. On September 21, 2004, the Dakota County District Court found that Romine had engaged in "domestic abuse," as that term is defined by Minn.Stat. § 518B.01, subd. 2(a)(2) (2004), because he prevented A.A. from making an emergency telephone call. Therefore, the district court issued an OFP, which ordered, among other things, that Romine "not enter or call [A.A.'s] place of employment at: Henry Sibley High School, 1897 Delaware Avenue, Mendota Heights, MN 55118." Romine appealed the issuance of the OFP but voluntarily dismissed the appeal before briefs were filed. After the OFP was extended, Romine appealed the extension,

but this court dismissed that appeal because Romine failed to comply with the rules of appellate procedure.

On October 22, 2004, Romine went to the building in which Henry Sibley High School is housed to speak to the superintendent of the school district, John F. Longtin, whose office is in the same building. Romine spoke to Longtin about Romine's concern that A.A. had disclosed information that violated the privacy of Romine's son and his son's half-sister, who are students in the school district. After the meeting, A.A. informed Longtin of the OFP, and Longtin then notified the police of his meeting with Romine. The state subsequently charged Romine with a criminal violation of the OFP pursuant to Minn.Stat. § 518B.01, subd. 14(b) (2004).[1]

The case was tried in June 2007. The state called A.A., Longtin, and the principal of Henry Sibley High School as witnesses. The defense called Romine's son and Romine's sister. Defense counsel's primary argument to the jury was that Romine did not actually go to Henry Sibley High School but instead went to the administrative offices of the school district. The jury returned a verdict of guilty.

On June 25, 2007, the district court sentenced Romine to 30 days in jail but stayed execution of the sentence for two years and placed Romine on probation. As part of its sentence, the district court also ordered that Romine not possess any firearms and that the firearms he owns be forfeited to the state and destroyed. Ro-

mine appeals. The order concerning Romine's firearms is stayed pending appeal.

## ISSUES

I. Is the OFP, the statutory basis of the OFP, or the statutory basis of Romine's conviction unconstitutionally vague or overbroad?

II. Is Romine entitled to a new trial?

III. Did the district court err by ordering the forfeiture and destruction of Romine's firearms as part of the sentence?

## ANALYSIS

### I.

Romine challenges the constitutionality of (a) the OFP; (b) the statute on which the OFP was based, Minn.Stat. § 518B.01, subd. 2(a)(2); and (c) the statute on which the conviction is based, Minn. Stat. § 518B.01, subd. 14. He argues that subdivision 2(a)(2) is vague and that subdivision 14 is both vague and overbroad. The constitutionality of a statute is a question of law, which we review de novo. *Hamilton v. Commissioner of Pub. Safety,* 600 N.W.2d 720, 722 (Minn.1999).

### A. Challenge to the OFP

The district court held that Romine could not challenge the constitutionality of the OFP in this case because he did not successfully challenge it in the case in which it was issued. As a general rule, a party's failure to appeal the issuance of a

---

1. The complaint literally alleges a violation of Minn.Stat. § 518B.01, subd. 14(a) (2004). But the complaint also states that the offense is punishable by "0–90 days and/or $1,000," and the warrant of conviction states that Romine is guilty of a misdemeanor, which indicates that Romine was convicted of violating subdivision 14(b). An error or omission in a complaint is not reversible error if the defendant understood the charges and did not request a substitute complaint. *State v. Hagen,* 361 N.W.2d 407, 413 (Minn.App.1985), *review denied* (Minn. Apr. 18, 1985). The "trial, judgment or other proceedings" based on a criminal complaint shall not be "affected by reason of a defect or imperfection in matters of form which does not tend to prejudice the substantial rights of the defendant." Minn. R.Crim. P. 17.06, subd. 1.

court order precludes a collateral attack on that order in a subsequent proceeding. In *State v. Cook*, 275 Minn. 571, 148 N.W.2d 368 (1967), the supreme court held that a defendant who had not pursued a direct appeal from the suspension of his driver's license could not collaterally attack the suspension in a subsequent prosecution for driving after suspension. *Id.* at 572, 148 N.W.2d at 369–70. This general rule also applies in the context of a prosecution for a violation of a harassment restraining order. In *State v. Harrington*, 504 N.W.2d 500 (Minn.App.1993), *review denied* (Minn. Sept. 30, 1993), this court held that a defendant who had not appealed from the issuance of a restraining order pursuant to chapter 609 was precluded from challenging the constitutionality of the restraining order in a subsequent criminal prosecution for a violation of the order. *Id.* at 503. We conclude that the general rule also applies to the issuance of an OFP pursuant to chapter 518B.

The district court issued the OFP following an evidentiary hearing at which Romine appeared. Romine had the right to appeal from the issuance of the OFP. *See Steeves v. Campbell*, 508 N.W.2d 817, 818 (Minn.App.1993) (noting that order for protection is appealable as final order in special proceeding). Romine initially pursued an appeal from the issuance of the OFP but voluntarily dismissed it. As a consequence, the OFP is a final judgment, and "the constitutional validity of the [OFP] stands as law of the case." *Harrington*, 504 N.W.2d at 503. Thus, Romine may not, in this case, collaterally attack the OFP on which his conviction is based. *See Cook*, 275 Minn. at 572, 148 N.W.2d at 369–70; *Harrington*, 504 N.W.2d at 503.

**B. Challenge to Subdivision 2(a)(2)**

■ Romine also challenges the constitutionality of subdivision 2 of section 518B.01, which defines "domestic abuse," in relevant part, as "the infliction of fear of imminent physical harm, bodily injury, or assault." Minn.Stat. § 518B.01, subd. 2(a)(2). Romine contends that subdivision 2(a)(2) is unduly vague because it is unclear whether the fear required of a person seeking an OFP is analyzed according to an objective standard or a subjective standard and, thus, it is unclear how a person may conform his or her conduct to the statute.

The definition of "domestic abuse" was relevant to the district court's determination in September 2004 that Romine had engaged in conduct that warranted the issuance of an OFP. The definition of "domestic abuse" was not properly at issue in Romine's June 2007 criminal trial, where the only issue was whether he had violated the terms of the OFP. Romine's challenge to this part of the statute is intertwined with his argument that the OFP itself is unconstitutional. Romine could have challenged the constitutionality of subdivision 2(a)(2) in the district court in September 2004 and in this court on direct appeal from the issuance of the OFP. Because he failed to raise the issue when the OFP was issued, he now may not collaterally attack the statute on which the OFP was based. *See Cook*, 275 Minn. at 572, 148 N.W.2d at 369–70; *Harrington*, 504 N.W.2d at 503.

**C. Challenge to Subdivision 14**

■ Romine argues that subdivision 14 of section 518B.01 is unconstitutionally vague. In the district court, Romine challenged the constitutionality of the statute in a pre-trial motion to dismiss the charges. The district court denied this part of the motion on the same ground as the other parts—that Romine failed to challenge the constitutionality of the stat-

ute in an appeal from the underlying OFP. Because Minn.Stat. § 518B.01, subd. 14(b), is the basis of the conviction that is on review in this case, Romine's challenge to the constitutionality of that statute is timely. *See, e.g., State v. Robinson,* 539 N.W.2d 231, 236 (Minn.1995) (considering challenge to constitutionality of statutory basis of conviction on direct appeal).

 Penal statutes "must meet due process standards of definiteness under both the United States Constitution and the Minnesota Constitution." *State v. Newstrom,* 371 N.W.2d 525, 528 (Minn. 1985); *see also* U.S. Const. amend XIV, § 1; Minn. Const. art. 1, § 7. "Persons of common intelligence must not be left to guess at the meaning of a statute nor differ as to its application." *Newstrom,* 371 N.W.2d at 528 (citing *Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1925)). If a statute imposes criminal penalties, a higher standard of certainty of meaning is required. *Id.* (citing *Kolender v. Lawson,* 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983)). As the United States Supreme Court has explained, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858 (citations omitted). Nevertheless, "[a] criminal statute need not be drafted with absolute certainty or mathematical precision." *State v. Enyeart,* 676 N.W.2d 311, 321 (Minn.App.2004). It must only furnish criteria that people "of common intelligence who come in contact with the statute may use with reasonable safety in determining its command." *State v. Suess,* 236 Minn. 174, 180, 52 N.W.2d 409, 414 (1952).

Romine's vagueness argument is very general in nature. Subdivision 14 is rela-

tively lengthy, consisting of 13 subparts. Romine does not identify any particular provision within subdivision 14 that he contends is vague. Subdivision 14(b) is the specific provision on which Romine's conviction is based, but Romine does not focus his argument on that provision. Romine contends that the statute allows for arbitrary enforcement, but he does not describe with specificity how the language of subdivision 14 allows for arbitrary enforcement due to its vagueness. Without a more specific argument, we are not convinced that subdivision 14 is unconstitutionally vague.

 Romine also argues that subdivision 14 is unconstitutionally overbroad. "A statute is overbroad on its face if it prohibits constitutionally protected activity, in addition to activity that may be prohibited without offending constitutional rights." *State v. Machholz,* 574 N.W.2d 415, 419 (Minn.1998). "[B]ecause the overbreadth doctrine has the potential to void an entire statute, it should be applied only as a last resort and only if the degree of overbreadth is substantial and the statute is not subject to a limiting construction." *Id.* (quotation omitted). Romine has not identified any specific language in subdivision 14 that he contends is overbroad. He does not describe how subdivision 14, on its face, extends to constitutionally protected conduct or speech. Again, without a more specific argument, we are not convinced that subdivision 14 is unconstitutionally overbroad.

## II.

Romine seeks a new trial by raising a number of claims of procedural errors during trial.

## A.

 Romine argues that the district court erred by preventing him from

presenting a complete defense. More specifically, Romine contends that the district court erroneously precluded his counsel from arguing to the jury that he did not intentionally violate the OFP. "Under our system of jurisprudence, every criminal defendant has the right to be … 'afforded a meaningful opportunity to present a complete defense.'" *State v. Richards*, 495 N.W.2d 187, 191 (Minn.1992) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)). But that right is not absolute. *State v. Hannon*, 703 N.W.2d 498, 506 (Minn.2005). "Counsel have the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." *State v. Wahlberg*, 296 N.W.2d 408, 419 (Minn.1980). We review a district court's rulings regarding the scope of arguments for abuse of discretion. *State v. Davidson*, 351 N.W.2d 8, 13 (Minn.1984).

The district court ruling at issue was made prior to closing arguments. Before trial, the state had moved in limine to preclude Romine from introducing evidence that Romine did not intend to violate the OFP. The district court reserved ruling on the issue. The state had no need to renew its motion because Romine did not offer such evidence. Prior to closing arguments, in response to the state's request, the district court ruled that Romine's counsel could not argue that Romine did not intend to violate the OFP. The district court noted, however, that counsel was free to argue that the state must prove "all the essential elements beyond a reasonable doubt." There was no evidence in the record that Romine did not intend to violate the OFP. Thus, the district court did not abuse its discretion by limiting the scope of Romine's closing arguments.

**B.**

■■■■ Romine also argues that the district court erred when it threatened to impose sanctions on his attorney, which he contends chilled defense counsel's strategy. A district court has a "responsibility in overseeing and regulating courtroom conduct and procedure during trials, including criminal trials." *State v. Mems*, 708 N.W.2d 526, 533 (Minn.2006); *see also* Minn. R. Gen. Prac. 2.02 (outlining district court's responsibility to maintain decorum in courtroom). "A judge shall require order and decorum in all proceedings before the judge." Code of Judicial Conduct, Canon 3.A(3); *see also Mems*, 708 N.W.2d at 533. In matters of decorum in the courtroom, a district court is vested with broad discretion. *State v. Lindsey*, 632 N.W.2d 652, 658 (Minn.2001).

Romine's argument pertains to the district court's statement prior to trial that it would sanction any lawyer who persisted in asking questions after an objection to the question was sustained. The statement was made in the context of a ruling on a motion in limine brought by the state. It was not made in the presence of the jury. Although directed primarily at Romine's counsel, it was a statement that, by its terms, applied to both attorneys. Romine has not demonstrated that the district court acted inappropriately by making the statement. Furthermore, Romine has not made any specific argument as to how defense strategy was chilled or how he otherwise was prejudiced. Thus, the district court did not abuse its discretion by warning counsel of possible sanctions.

**C.**

■■■ Romine argues that the district court improperly took judicial notice of the affidavit of service of the OFP on Romine. The district court did not take judicial

notice of the affidavit but, rather, admitted it as an exhibit when the affidavit was offered by the state. Public records, such as an affidavit from a district court file, are admissible as an exception to the hearsay rule. Minn. R. Evid. 803(8). There is no apparent reason why the affidavit in this case would lack trustworthiness. Furthermore, certified copies of public records are self-authenticating and, thus, require no foundation for admission. Minn. R. Evid. 902(4). The affidavit of service is certified. Thus, the district court did not abuse its discretion by admitting the document into evidence.

### D.

 Romine argues that he is entitled to a new trial because of objectionable statements made by the prosecutor during closing arguments. "For unobjected-to prosecutorial misconduct, we apply a modified plain error test. For objected-to prosecutorial misconduct, we have utilized a harmless error test, the application of which varies based on the severity of the misconduct." *State v. Wren*, 738 N.W.2d 378, 389 (Minn.2007).

 The state's closing argument " 'must be based on the evidence produced at trial, or the reasonable inferences from that evidence.' " *State v. Young*, 710 N.W.2d 272, 281 (Minn.2006) (quoting *State v. Porter*, 526 N.W.2d 359, 363 (Minn.1995)). A prosecutor may not make arguments "calculated to inflame the passions or prejudices of the jury." *State v. Salitros*, 499 N.W.2d 815, 817 (Minn.1993) (quotation omitted). But a closing argument is not required to be "colorless." *Young*, 710 N.W.2d at 281 (quotation omitted). A reviewing court should look at the closing argument as a whole. *State v. Leake*, 699 N.W.2d 312, 327 (Minn.2005). Romine objected to the state's closing argument twice. Romine first objected

when the prosecutor stated, "It wasn't easy cross-examining a 14–year–old person, but that's who [Romine] had testify here, a 14–year–old child about things that families try to hide, and that was a kind of painful exercise we had to sit through." Romine also objected when the prosecutor stated:

> Counsel would like you to simply make a mockery of our justice system, of court orders and seals and affidavits, and indicate that Mr. Romine was not personally served this at a courthouse on that date somehow. You folks can go and say, we think this is just not plausible. You have to say also that a strict court order for protection to prevent this sort of harm from happening to Ms. Romine is also not nonsense.

The district court sustained both of these objections. On appeal, the state has not argued that the comments were not improper. Thus, we assume for the sake of our analysis that these two comments were improper.

 Romine also challenges four additional comments made by the prosecutor to which he did not object at trial. Romine contends that the prosecutor either denigrated the defense or misstated the applicable law regarding intent to violate an OFP. Romine contends that the prosecutor denigrated the defense by stating, "It's a shame we had to go through all of this," and by speaking disparagingly about Romine's argument that an illness affected his conduct. A review of those statements, however, indicates that they do not disparage the defense or the defendant. The first statement was merely an acknowledgment that the relationship between A.A. and Romine had become contentious. The second statement was an attempt to refute Romine's defense with the testimony produced by witnesses for the state.

Romine also contends that the prosecutor committed misconduct by stating that Romine had "willfully" violated the OFP and displayed "vindictiveness" in his actions. Romine contends that the comment was unfair because the district court prohibited his counsel from arguing that he had no intent to violate the OFP. A review of the transcript, however, indicates that although the prosecutor used the word "willfully," he did not make a lengthy argument that Romine had intentionally violated the OFP. Further, the reference to "vindictiveness" was a response to Romine's argument that A.A. obtained the OFP only to punish Romine. We conclude that none of the statements that Romine challenges rises to the level of prosecutorial misconduct. Because we conclude that there was no error with respect to unobjected-to statements by the prosecutor, we need not go further with the modified plain-error test applied in *Wren.*

The question remains, however, whether the two objected-to comments by the prosecutor, which we assume to be improper, require that Romine be given a new trial. Reversal is not required if the error is "harmless beyond a reasonable doubt" and if "the verdict 'was surely unattributable' to the misconduct." *Wren,* 738 N.W.2d at 394 (quoting *State v. Swanson,* 707 N.W.2d 645, 658 (Minn.2006)). We begin by noting that the comments at issue were contained on less than one page of the transcript of the prosecutor's closing argument, which spanned more than 30 pages. *See State v. Powers,* 654 N.W.2d 667, 679 (Minn.2003) (considering relative duration of comment in determining whether it deprived defendant of fair trial). The prosecutor's comment about cross-examining Romine's 14–year–old son was not derogatory toward Romine personally and appears to have been intended to justify the prosecutor's cross-examination of a

boy whom the jurors may have viewed with sympathy. The district court instructed the jury to disregard the prosecutor's characterization of the defense as "nonsense," which serves to cure any potential prejudice. *See State v. Davis,* 685 N.W.2d 442, 446 (Minn.App.2004) (noting that any potential prejudice created by inappropriate remark was cured when objection was sustained and jury was instructed to disregard the remark), *review denied* (Minn. Oct. 27, 2004). More importantly, the evidence supporting the verdict was strong; Romine did not dispute that he entered the building that was specifically identified in the OFP. In light of these factors, we conclude that the objected-to comments were harmless and that the jury's verdict was "surely unattributable" to them. *Swanson,* 707 N.W.2d at 658. Thus, none of the objected-to statements of the prosecutor require a new trial.

### E.

Romine argues that he is entitled to a new trial because the district court judge failed to recuse himself after receiving a victim-impact statement from A.A. prior to trial. The Fourteenth Amendment right to due process under the United States Constitution includes the right to an impartial judge. *Cuypers v. State,* 711 N.W.2d 100, 104 (Minn.2006) (citing *Bracy v. Gramley,* 520 U.S. 899, 904–05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997)). "There is the presumption that a judge has discharged his or her judicial duties properly." *Mems,* 708 N.W.2d at 533. Thus, a defendant must assert allegations of impropriety sufficient to overcome this presumption. *See McKenzie v. State,* 583 N.W.2d 744, 747 (Minn.1998).

Just before trial, A.A. sent a victim-impact statement to the district court, requesting that it be included in the district court file. The statement described the

financial, physical, and emotional impact on A.A. resulting from Romine's conduct and the ensuing legal proceedings. The statement also made accusations against Romine's legal counsel. It was not until sentencing, however, that Romine moved to disqualify the district court judge. In denying the motion, the district court judge noted

> I made careful note not to even look at it until after the case was over because the defendant is presumed innocent. I was a little surprised that we would receive it before the trial was over but I in no way looked at it before the trial was over. As a matter of fact, I studiously avoided looking at it. And, I also am not very much impressed by it. . . .

Romine has not offered any evidence or argument to overcome the district court judge's statement that he did not read the victim-impact statement before or during trial. Although such a statement may be submitted at sentencing, *see* Minn.Stat. § 611A.038(a) (2004), it appears that the statement actually had little to no impact on the district court's sentence. Romine does not cite any legal authority that would require a new trial on these facts. Thus, we conclude that the district court did not abuse its discretion when it denied Romine's disqualification motion.

### F.

Romine argues that a new trial is required because the prosecutor had a conflict of interest and should have disqualified himself or should have been disqualified by the district court. Romine did not make such a request in the district court or otherwise raise the issue. This court generally will not consider issues that were not raised in the district court. *State v. Davis,* 735 N.W.2d 674, 681 (Minn.2007). Thus, we will not consider Romine's argu-

ment concerning the prosecutor's alleged conflict of interest.

### III.

Romine argues that the district court erred by ordering, as part of his sentence, that his firearms be forfeited to the state and destroyed. Romine's argument raises issues of statutory interpretation, which are subject to a de novo standard of review. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996).

At the sentencing hearing, the district court referred to "Federal gun control legislation" as its authority for ordering the forfeiture and destruction of Romine's firearms. In its responsive brief, the state provides a more specific citation to a federal statute that provides:

> It shall be unlawful for any person—
>
> (8) who is subject to a court order that—
>
>> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>>
>> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>>
>> (C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>>
>> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; . . .
>
> . . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(8) (2000).

This federal statute sets forth a criminal offense that may be the basis of a prosecution by the United States Department of Justice in the federal courts. If a person is found guilty of the offense described in section 922(g)(8), a federal court may impose punishment according to federal law. "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231 (2000). Although a state court may order a person to remain law-abiding as a condition of probation or release, a state court may not rely on 18 U.S.C. § 922(g)(8) to order the confiscation of firearms belonging to a person convicted of violating Minn.Stat. § 518B.01, subd. 14(b). Thus, the federal statute cited by the state does not authorize the district court to order the forfeiture and destruction of Romine's firearms.

The state also cites provisions of state law as authority for the district court's order for the forfeiture and destruction of Romine's firearms. First, the state cites a statute that requires a district court to order the forfeiture of a person's firearms if the person used a firearm while violating an OFP:

> If the court determines that a person convicted under paragraph (b) or (c) of violating an order for protection owns or possesses a firearm *and used it in any way during the commission of the viola-* *tion,* it shall order that the firearm be summarily forfeited under section 609.5316, subdivision 3.

Minn.Stat. § 518B.01, subd. 14(m) (2004) (emphasis added). Romine argues that this statute does not justify the district court's order because he did not use a firearm while engaging in the conduct for which he was convicted, namely, visiting the building in which Henry Sibley High School is housed and speaking with the superintendent of the school district. Romine is correct that there was no evidence at trial that he possessed or used a firearm while visiting the school building. Thus, subdivision 14(m) does not authorize the district court's order for the forfeiture and destruction of Romine's firearms.

Second, the state cites a statute that permits a district court to prohibit a person from possessing a firearm for more than three years if the person used a firearm while violating an OFP:

> When a person is convicted under paragraph (b) or (c) of violating an order for protection *and the court determines that the person used a firearm in any way during commission of the violation,* the court may order that the person is prohibited from possessing any type of firearm for any period longer than three years or for the remainder of the person's life.

Minn.Stat. § 518B.01, subd. 14(j) (2004) (emphasis added). Romine again argues that this statute does not justify the district court's order because he did not use a firearm during the commission of the violation of the OFP. He again is correct. Thus, subdivision 14(j) does not authorize the district court's order for the forfeiture and destruction of Romine's firearms.

Third, the state cites a statute that prohibits, for a limited period of time, the possession of a pistol by a person who has been convicted of a violation of subdivision 14(b) or (c) of section 518B.01:

Except as otherwise provided in paragraph (j), a person is not entitled to possess a pistol if the person has been convicted under paragraph (b) or (c) after August 1, 1996, of violating an order for protection, unless three years have elapsed from the date of conviction and, during that time, the person has not been convicted of any other violation of this section. Property rights may not be abated but access may be restricted by the courts. A person who possesses a pistol in violation of this paragraph is guilty of a gross misdemeanor.

Minn.Stat. § 518B.01, subd. 14(*l*) (2004). As stated above, Romine was convicted of a violation of paragraph (b) of subdivision 14.

Romine argues that subdivision 14(*l*) may authorize limited restrictions on his possession of certain firearms but does not authorize the district court's order for the forfeiture and destruction of his firearms. Romine is correct. Subdivision 14(*l*) does not authorize a sentence that affects any type of firearm other than a pistol, does not authorize a restriction lasting more than three years, and does not authorize a term requiring the forfeiture and destruction of firearms rather than merely restricting their possession. Furthermore, subdivision 14(*l*) expressly states, "Property rights may not be abated...." Thus, the district court's order for the forfeiture and destruction of Romine's firearms is erroneous.

Romine argues further that the district court's order is erroneous because none of his firearms are "pistols." He relies on affidavits that he filed with the district court in which he states that he owns shotguns and rifles but not pistols. The domestic abuse act does not define the term "pistol," and there is no definition elsewhere in the Minnesota Statutes that applies to the domestic abuse act. The common definition of "pistol" is a "firearm held and fired with one hand." *The American Heritage College Dictionary* 1060 (4th ed. 2007). Romine's counsel raised the issue at sentencing, but the district court made no findings as to whether any of Romine's firearms are pistols. The affidavits submitted by Romine raise genuine questions of fact as to whether some of his firearms are pistols. On remand, the district court shall make findings as to whether each of Romine's firearms is a pistol and shall resentence Romine in a manner that is consistent with this opinion.[2]

## DECISION

Romine may not collaterally attack the constitutionality of the September 2004 OFP or the statute on which the OFP was based. The statute on which this prosecution is based is not unconstitutionally vague or overbroad. Romine is not entitled to a new trial. The district court erred by ordering the forfeiture and destruction of Romine's firearms, and the case is remanded to the district court for resentencing. Romine's motion for leave to submit a supplemental brief is denied.

**Affirmed in part, reversed in part, and remanded; motion denied.**

---

**2.** After this appeal was fully briefed, Romine filed a motion for leave to submit a supplemental brief to address the United States Supreme Court's recent decision in *District of Columbia v. Heller*, — U.S. —, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Romine, however, did not raise a Second Amendment challenge in his principal appellate brief, and he did not preserve the issue by asserting such a challenge in the district court. Thus, we deny Romine's motion for supplemental briefing as moot. *See Davis*, 735 N.W.2d at 681. On remand, the district court may, in its discretion, allow Romine to pursue a Second Amendment argument, if Romine still wishes to do so.