*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0032**

State of Minnesota,
Respondent,

vs.

Ali Mehrallian,
Appellant.

**Filed December 15, 2014
Affirmed
Johnson, Judge**

Dakota County District Court
File No. 19WS-CR-13-11686

Lori Swanson, Attorney General, St. Paul, Minnesota; and

William L. Bernard, Jeremy P. Knutson, Grannis & Hauge, P.A., Eagan, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Stephen L. Smith, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**UNPUBLISHED OPINION**

**JOHNSON**, Judge

A Dakota County jury found Ali Mehralian[1] guilty of contempt of court based on evidence that he violated an eviction order that required him to vacate his former wife's home. Mehralian does not dispute that he did not vacate his former wife's home, but he challenges the sufficiency of the evidence on the grounds that other court orders permitted him to remain in the home and that he did not willfully violate the eviction order. We affirm.

**FACTS**

This appeal arises from a failed relationship between Mehralian and a woman, R.D., to whom he was married from 2010 to 2013.

In March 2012, while Mehralian and R.D. were separated, R.D. obtained a harassment restraining order (HRO) from the Dakota County District Court. The HRO prohibited Mehralian, for two years, from harassing or having any contact with R.D. and ordered him to stay away from her home in Eagan, which they previously had shared. In August 2012, the district court amended the March 2012 HRO to allow Mehralian to be present at the home "unless [R.D.] is on the property, in which case he shall leave."

In May 2012, Mehralian petitioned for dissolution of the marriage in the Hennepin County District Court. In August 2012, that court awarded temporary custody of the

---

[1]The caption of this opinion spells appellant's last name with a double *l*, which is the way it is spelled in the district court's sentencing order and in the notice of appeal. *See* Minn. R. Civ. App. P. 143.01. In his handwritten *pro se* supplemental brief, however, Mehralian spells his last name with only one *l*. Thus, we use that spelling throughout the body of this opinion.

couple's two children to Mehralian. In September 2012, the Dakota County District Court transferred the HRO case to the Hennepin County District Court. In June 2013, the Hennepin County District Court issued its dissolution judgment and decree. The decree awarded the marital homestead to R.D. and awarded sole legal and physical custody of the children to Mehralian. The decree provides that Mehralian and the children may "maintain exclusive use and occupancy of the homestead through the end of the [2012-2013] school year" but that Mehralian "shall vacate the home no later than July 31, 2013, and [R.D.] shall assume possession and occupancy of the home beginning August 1, 2013."

Mehralian did not vacate the home by July 31, 2013. R.D. commenced an eviction action in the Dakota County District Court. On Tuesday, August 20, 2013, R.D. and Mehralian appeared before the district court for a hearing. Both parties appeared *pro se*. At that time, Mehralian still was living in the home. At the conclusion of the hearing, the district court issued an eviction order in which it granted the relief sought by R.D. The order includes a finding that Mehralian "has failed to vacate the premises after notice to vacate was properly given." The order includes a conclusion of law that R.D. "is entitled to possession of the premises and [Mehralian] should vacate the premises." The order includes a provision that states, "The Writ of Recovery (the Order requiring Defendant to vacate the premises) will be issued 8/21/13 @ noon and [Mehralian] may remain in possession of the premises until that date." Judgment was entered that same day.

The next day, Wednesday, August 21, 2013, Mehralian filed two *pro se* motions: an emergency motion to quash the writ and an emergency motion to stay the writ. The

3

district court promptly denied both motions that same day. Mehralian also attempted to appeal from the eviction judgment on that day. This court later dismissed the appeal for procedural deficiencies. *See* No. A13-1578 (Minn. App. Oct. 11, 2013) (order).

On Thursday, August 22, 2013, at approximately 11:00 p.m., R.D. went to her home because she had heard that Mehralian was removing her possessions. She saw that Mehralian and the children were present inside the home, which indicated that Mehralian had not vacated the property. She called the police. R.D. showed the responding officer the March 2012 HRO and the August 20, 2013 eviction order. The officer attempted to verify the documents by accessing the district court's records, but he was unable to do so because of the "numerous court records associated with the two parties." R.D. left without entering the home.

On Monday, August 26, 2013, the Eagan police department issued a citation to Mehralian for violating the August 2012 amended HRO by being present at R.D.'s home on August 22, 2013. In October 2013, the state filed a complaint in which it charged Mehralian with one count of violating an HRO, in violation of Minn. Stat. § 609.748, subd. 6(b) (2012), and one count of contempt of court, in violation of Minn. Stat. § 588.20, subd. 2(4) (2012). Both counts were based on an allegation that Mehralian violated the August 2012 amended HRO by being present at R.D.'s home on August 22, 2013. Shortly before trial, the state amended the complaint to charge Mehralian with an additional count of contempt of court, in violation of Minn. Stat. § 588.20, subd. 2(4). The additional count was based on an allegation that Mehralian violated the August 20, 2013 eviction order by occupying R.D.'s home on August 22, 2013.

4

The case was tried to a jury on two days in November 2013. The state called three witnesses in its case-in-chief: R.D. and two Eagan police officers. After the state rested, the district court dismissed the first two counts, which were based on the alleged violations of the August 2012 amended HRO, on the ground that the state had failed to prove that Mehralian knowingly violated the terms of that HRO on August 22, 2013. Mehralian testified in his own defense but did not call any other witnesses. The jury returned a verdict of guilty on the sole remaining count, contempt of court for violating the August 20, 2013 eviction order. In December 2013, the district court sentenced Mehralian to 15 days in jail and placed him on probation for one year. Mehralian appeals.

## DECISION

Mehralian argues that the evidence is insufficient to support his conviction of contempt of court.

When considering a claim of insufficient evidence, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction," is sufficient to allow the jurors to reach the verdict that they did. *State v. Caine*, 746 N.W.2d 339, 356 (Minn. 2008) (quotation omitted). We must assume that the jury "believed the state's witnesses and disbelieved any contrary evidence." *Gulbertson v. State*, 843 N.W.2d 240, 245 (Minn. 2014) (quotation omitted). "[W]e will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense."

*State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (citing *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004)).

A person is guilty of contempt of court if he engages in "willful disobedience to the lawful process or other mandate of a court." Minn. Stat. § 588.20, subd. 2(4) (2012). In this case, the state's evidence includes the Dakota County District Court's August 20, 2013 eviction order. That order plainly states that R.D. "is entitled to possession of the premises and [Mehralian] should vacate the premises," and further states Mehralian "may remain in possession of the premises" until noon on August 21, 2013. The state also introduced evidence that Mehralian was still in possession of R.D.'s home on August 22, 2013. R.D. testified that Mehralian was still living in her home that evening and that she was unable to exercise her right to exclusive possession. Mehralian himself testified that he sought to stay and to appeal from the eviction order because he did not want to move his possessions out of the home.

Mehralian appears to contend that the August 20, 2013 eviction order is not a valid, binding order because it is inconsistent with the August 2012 amended HRO, which provided that he could remain in the home "unless [R.D.] is on the property, in which case he shall leave." Mehralian notes that neither the June 2013 dissolution decree nor the August 20, 2013 eviction order "specifically" nullified the August 2012 amended HRO. Mehralian provides no legal authority for his suggestion that the eviction order was ineffective or invalid because of the previously issued orders or because the eviction order did not expressly supersede the previously issued orders. If Mehralian believed that the eviction order should have accommodated or incorporated the previously issued

6

orders, he was obligated to present argument to that effect to the district court at the eviction hearing and, if unsuccessful, to properly appeal from any adverse judgment arising from that hearing. Having failed to persuade the district court that he was entitled to possess the property, Mehralian may not mount a collateral attack on the eviction order in this criminal case. *See State v. Ness*, 819 N.W.2d 219, 222-23 (Minn. App. 2012), *aff'd*, 834 N.W.2d 177 (Minn. 2013); *State v. Romine*, 757 N.W.2d 884, 890 (Minn. App. 2008), *review denied* (Minn. Feb. 17, 2009).

Furthermore, Mehralian is incorrect in his premise that the eviction order necessarily conflicts with the August 2012 amended HRO. The former required him to vacate the home by noon on August 21, 2013, and to no longer occupy it *as a resident*; the latter allowed him to be present at the home, *as a visitor*, unless R.D. was at home. The evidence shows that Mehralian kept his possessions at the home after noon on August 21, 2013, thereby occupying it as a resident. His continued occupation of the home as a resident is not permitted by the August 2012 amended HRO. Thus, Mehralian has no basis for arguing that the eviction order is ineffective or invalid due to a conflict with the August 2012 amended HRO.

Mehralian also appears to contend that the evidence is insufficient to prove that any violation of the eviction order was willful. He asserts that the multiplicity of orders governing the home created an ambiguous and confusing situation. But the state's case includes abundant evidence from which a jury could infer that Mehralian knew that he was prohibited from occupying the home as of noon on August 21, 2013. For example, Mehralian testified that he knew that the dissolution decree required him to vacate the

7

home by July 31, 2013. The state introduced evidence that Mehralian took vigorous measures on August 20, 2013 to stay the eviction order, first by filing motions with the Dakota County District Court and then by attempting to lodge an appeal with this court. The state introduced the statement of the case that Mehralian filed in this court, in which Mehralian acknowledged that, at the August 20, 2013 eviction hearing, the Dakota County judge told him to be "out by 12:00 noon tomorrow." This body of evidence is more than sufficient to allow the jury to infer that Mehralian knew that he was required to vacate the home by noon on August 21, 2013, and, thus, to conclude that Mehralian willfully disobeyed the Dakota County District Court's eviction order.

In his *pro se* supplemental brief, Mehralian appears to argue that, despite the eviction order, he was not prohibited from occupying the home on August 22, 2013, because he had not been served with a writ of recovery. The district court addressed this issue with Mehralian at his sentencing hearing; the district court explained that a writ of recovery is issued to the county sheriff, not to the person to be evicted, and is merely a means by which the person entitled to possession may enforce an eviction order. The district court is correct. Mehralian was required by law to comply with the terms of the eviction order without regard for whether the sheriff executed the writ of recovery. *See* Minn. Stat. § 504B.365, subd. 1(a); *Smith v. Park*, 31 Minn. 70, 73, 16 N.W. 490, 492 (1883). Mehralian could have forestalled the eviction and lawfully remained in possession only if he had properly appealed from the eviction judgment and posted a supersedeas bond to cover the costs of an appeal. *See* Minn. Stat. § 504B.371, subds. 1-5. (2012); *Makela v. Peters*, 425 N.W.2d 605, 605-06 (Minn. App. 1988). But Mehralian

did not properly lodge an appeal with this court and did not post a supersedeas bond. No. A13-1578 (Minn. App. Aug. 29, 2013) (order). Thus, his contention is without merit. We have reviewed the entirety of Mehralian's *pro se* supplemental brief, and we conclude that it does not contain any grounds for reversal.

**Affirmed.**