*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1923**

State of Minnesota,
Respondent,

vs.

Mark William Latimer,
Appellant.

**Filed October 11, 2016
Affirmed
Kirk, Judge**

Chisago County District Court
File No. 13-CR-13-396

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janet Reiter, Chisago County Attorney, Beth A. Beaman, Assistant County Attorney, Center City, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**KIRK**, Judge

Following a bench trial, appellant Mark William Latimer was convicted of attempted first-degree murder, attempted second-degree murder, and first-degree assault.

On appeal, appellant argues that the attempted first- and second-degree murder convictions must be reversed because the state failed to prove intent beyond a reasonable doubt. Appellant raises a number of additional arguments in his pro se supplemental brief. We affirm.

**FACTS**

On June 8, 2012, Rush City Correctional Facility security cameras captured the following sequence of events. Appellant, an inmate at the facility, was working in the industry area when he picked up, inspected, and set down a large wooden board. Shortly thereafter, appellant retrieved the same board, carried it through the industry area, and approached inmate J.V. from behind. J.V. was seated in a chair and working. Appellant struck J.V. in the back of the head with the board, which caused J.V. to slump forward in his chair and rendered him motionless. Appellant proceeded to strike J.V. in the head five additional times. J.V. remained seated and motionless during this attack. After striking J.V. a total of six times, appellant walked away and watched as staff responded to J.V.'s injuries.

The facility's staff deemed J.V.'s injuries life-threatening and called an ambulance to transport him to a nearby hospital where he would spend approximately four weeks recovering. J.V. suffered fractures around his eye and a depressed skull fracture, which caused bruising, bleeding, and swelling of the brain. J.V. underwent emergency surgery and was placed in a medically induced coma. Expert testimony presented at trial indicated that J.V.'s injuries would generally lead to death within six to eight hours without medical treatment.

2

Appellant gave a taped statement to one of the facility's special investigators on the date of the attack. During this statement, appellant explained J.V. had discovered appellant's prior criminal sexual conduct convictions, had called appellant a "cho mo," and had threatened him that morning. Appellant told the special investigator, "I ain't got nothing to lose so I bust him in his head." Appellant also stated, "I was just gonna, just gonna bust him in his head. I wasn't gonna hurt him bad." Appellant further stated that another inmate voiced concern that appellant was "killing" J.V. and told appellant to "slow down a little bit." J.V. testified at trial that he knew of appellant but denied threatening him.

At trial, officer testimony established that threats between inmates often related to the offense that placed an inmate in prison, and that sex offenders are sometimes targeted by other inmates. At the facility, inmates are able to report threats in the following ways: (1) through the facility's kite system; (2) by verbally informing staff, who are present in all areas; (3) by having a family member call the facility to report a threat; and (4) by speaking directly with the lieutenant during rounds. Also, the facility has a policy to respond to kites within five business days, and inmates are instructed to verbally communicate with staff in emergencies.

Appellant was initially charged with first-degree assault. The criminal complaint was later amended to include additional charges of attempted first-degree murder and attempted second-degree murder. In his written closing argument, appellant's counsel raised the affirmative defense of self-defense, which hinged on J.V.'s alleged threat to appellant and appellant's known status as a sex-offender. The district court concluded that

3

the state proved the elements of all three charges beyond a reasonable doubt. The district court also determined that the state proved beyond a reasonable doubt that appellant did not act in self-defense. The district court imposed a 240-month sentence for the attempted first-degree murder conviction. This appeal follows.

**DECISION**

**I.      The record contains sufficient evidence to prove beyond a reasonable doubt that appellant committed attempted first- and second-degree murder.**

Appellant argues that the evidence presented at trial failed to establish beyond a reasonable doubt that appellant intended to kill J.V. One is guilty of attempted murder when he, "with intent to commit a [murder], does an act which is a substantial step toward . . . the commission of the [murder]." Minn. Stat. § 609.17, subd. 1 (2012). First-degree murder requires a defendant to act with "premeditation and with intent to effect the death of the person or of another." Minn. Stat. § 609.185(a)(1) (2012). "'[P]remeditation' means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Minn. Stat. § 609.18 (2012). Second-degree murder requires—as relevant to this case—that a person act "with intent to effect the death of that person or another, but without premeditation." Minn. Stat. § 609.19, subd. 1(1) (2012). "'With intent to' or 'with intent that' means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2012).

"Because intent and premeditation are states of mind, they are generally proved only by inferences drawn from a person's words or actions in light of all the surrounding

4

circumstances." *State v. Andrews*, 388 N.W.2d 723, 728 (Minn. 1986) (citing *State v. Kirch*, 322 N.W.2d 770, 773 (Minn. 1982)). A fact-finder "may infer that a person intends the natural and probable consequences of his actions and a defendant's statements as to his intentions are not binding on the [fact-finder] if his acts demonstrated a contrary intent." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997) (citing *State v. Lundstrom*, 285 Minn. 130, 140, 171 N.W.2d 718, 724-25 (1969)).

With regard to premeditation, "the state must prove that some appreciable period of time passed after the defendant formed the intent to kill, during which the statutorily required consideration, planning, preparation, or determination took place." *State v. Holliday*, 745 N.W.2d 556, 563 (Minn. 2008). "[A]n inference of premeditation may be supported by several categories of evidence, including planning activity, motive, the nature of the [attempted] killing, and a defendant's actions following the [attempted] killing." *State v. Cox*, 884 N.W.2d 400, 412 (Minn. 2016) (citations omitted).

Because this appeal turns on questions of intent and premeditation, the evidence at issue is circumstantial in nature. When evaluating circumstantial evidence, the reviewing court uses a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). "The first step is to identify the circumstances proved." *Id.* (citing *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010)). "In identifying the circumstances proved, we defer to the [fact-finder's] acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *Id.* at 598-99 (quotation omitted). The reviewing court "construe[s] conflicting evidence in the light most favorable to the verdict and assume[s] that the [fact-finder] believed the [s]tate's

witnesses and disbelieved the defense witnesses." *Id.* at 599 (quotation omitted). "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotation omitted).

With regard to premeditation, we first look at the circumstances proved. Security footage shows appellant pick up and set down a large wooden board, walk away, return to the area to retrieve the same board, walk through the industry area, and approach J.V. from behind. Appellant proceeded to attack J.V. Appellant targeted the back of J.V.'s head with each of six blows, which the district court deemed "a vital area of the body." Appellant informed the facility's special investigator that this attack was in response to J.V. threatening appellant. Finally, appellant walked away after the attack without rendering aid to J.V. These proved circumstances are consistent with the conclusion that "some appreciable period of time passed after [appellant] formed the intent to kill, during which the statutorily required consideration, planning, preparation, or determination took place." *Holliday*, 745 N.W.2d at 563. Appellant has not offered a contrary, rational hypothesis. Therefore, we conclude that the state proved that appellant acted with premeditation to kill J.V.

With regard to intent, appellant argues that there is a reasonable inference, other than intent to kill, which can be drawn. Appellant argues that it is reasonable to infer that he instead intended to preemptively incapacitate J.V. to prevent J.V. from acting on his threats. However, to the contrary, the record establishes appellant carried out a vicious attack that went well beyond an attempt to merely incapacitate J.V. As discussed above, appellant struck J.V. in the back of the head with a board, which caused J.V. to slump

6

forward in his chair and rendered him motionless. Appellant proceeded to strike J.V. in the head five additional times. Finally, following the assault, appellant walked away and did not render aid to J.V. This incident resulted in severe injuries that would have caused J.V. to die had he not received emergency medical care.

Appellant's intent-related arguments are contradicted by the vicious nature of the attack, the number of blows, appellant's decision to target a vital area of J.V.'s body, and the severity of J.V.'s injuries. These proved circumstances do not support a conclusion that appellant merely intended to incapacitate J.V. Rather, as discussed by the district court, appellant's attack on J.V. is analogous to the attack perpetrated in *State v. Geshick*, 283 Minn. 380, 168 N.W.2d 331 (1969). In *Geshick*, the supreme court upheld an attempted first-degree murder conviction where the defendant approached a fellow inmate from behind and stabbed him in the back, nicking the outer surface of the victim's lung, and causing a nine-day hospitalization. *Id.* at 381-82, 168 N.W.2d at 331-32. Based on those facts, the supreme court held "that the jury could conclude beyond a reasonable doubt that defendant attempted, with premeditation and malice, to commit the act of [first-degree murder]." *Id.* at 382, 168 N.W.2d at 332.

Similarly, the district court's conclusion here, that appellant acted with the requisite intent to commit murder, is firmly supported by the record. Any contrary explanation is irreconcilable with the facts of this attack. *See, e.g.*, *State v. Taylor*, 650 N.W.2d 190, 207 (Minn. 2002) ("[Eight] blows shows that the act was intentional, and the use of a heavy object on the victim's head shows that the assailant intended to kill." (citation omitted)); *State v. Bock*, 490 N.W.2d 116, 120 (Minn. App. 1992) ("The nature of [the victim's]

7

injuries and the severity of the blows to his head are evidence of [the defendant's] intent to kill."), *review denied* (Minn. Aug. 27, 1992). As such, based on the record before this court, the only rational hypothesis is that appellant acted with intent to commit attempted first- and second-degree murder.

## II.    Appellant's pro se arguments lack merit.

In his pro se supplemental brief, appellant first raises a number of arguments relating to previous offenses and convictions. Appellant raised these arguments in a previous habeas appeal. *Latimer v. Fabian*, No. A10-0646, 2010 WL 3958689, at *2-3 (Minn. App. Oct. 12, 2010) (affirming the district court's denial of the petition for writ of habeas corpus because appellant "failed to demonstrate any due-process violation"), *review denied* (Minn. Dec. 14, 2010). These arguments are not properly before this court as appellant may not raise collateral matters on appeal from the judgment of conviction in this file. *See State v. Romine*, 757 N.W.2d 884, 889-90 (Minn. App. 2008) (concluding that a party's failure to successfully challenge a court order precludes collateral attack on that order in a subsequent proceeding), *review denied* (Minn. Feb. 17, 2009).

Second, appellant argues that he is entitled to credit for time spent in the custody of the Minnesota Sex Offender Program (MSOP) between the date of the attack and sentencing. A criminal defendant is not entitled to such credit when placement in a secure treatment facility is based upon prior civil commitment and is unrelated to the criminal charges for which he was later sentenced. *State v. Johnson*, 744 N.W.2d 376, 380 (Minn. 2008). Appellant's placement in the MSOP is unrelated to this criminal case. Therefore, appellant's argument regarding jail credit is meritless.

8

Third, appellant argues that he was deprived of a fair trial due to ineffective assistance of counsel. Specifically, appellant argues that counsel was ineffective in failing to: (1) explain to appellant that he was charged with attempted murder; (2) conduct sufficient investigation; and (3) perform adequately during the trial. In addition, appellant asserts that counsel conspired with state agencies during the representation.

To establish ineffective assistance of counsel, "[t]he defendant must affirmatively prove that his counsel's representation 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2068 (1984)). Minnesota appellate courts will generally not review such a claim when it is based on trial strategy. *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013).

There is no indication in the record that counsel failed to inform appellant of the attempted murder charges. On June 17, 2014, an amended complaint was filed, which added the charges of attempted first- and second-degree murder. The record indicates that appellant received a copy of the amended complaint and waived further reading of his rights. The record also indicates that counsel conducted sufficient investigation, performed reasonably at trial, and presented a reasonable defense focused on intent and self-defense. Appellant's arguments on these points implicate issues of trial strategy, which this court will generally not review. *Id.*; *Voorhees v. State*, 627 N.W.2d 642, 651 (Minn. 2001) ("[M]atters of trial strategy, including which defenses to raise at trial, will not be reviewed later for competence."). Finally, there is no indication that counsel conspired against

9

appellant during the representation. We conclude that appellant was not deprived of a fair trial through ineffective assistance of counsel.

Fourth, appellant raises various arguments relating to the deprivation of his right to represent himself and to receive a fair trial. While this section of the pro se brief contains a number of citations, appellant fails to demonstrate any prejudice or injury. Rather, appellant merely asserts that the facility's law library was inadequate. These arguments are meritless.

Fifth, appellant asserts that his constitutional rights were violated when the state added attempted first- and second-degree murder charges following his refusal to accept a plea offer. The United States Supreme Court has concluded that, "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 668 (1978). Moreover, appellant does not present—and the record does not contain—any evidence of vindictive prosecution. *State v. Pettee*, 538 N.W.2d 126, 132 (Minn. 1995) ("A mere opportunity for vindictiveness is insufficient to justify imposing an inflexible prophylactic presumption [of a due process violation]." (citing *United States v. Goodwin*, 457 U.S. 368, 384, 102 S. Ct. 2485, 2494 (1982))). Therefore, appellant's argument regarding overcharging is meritless.

Lastly, appellant's pro se brief presents a *Miranda*-based argument relating to appellant's taped statement following the attack. Appellant raised no objection when this

statement was introduced at trial.  As such, this argument is forfeited on appeal.  *State v. Wellman*, 341 N.W.2d 561, 564 (Minn. 1983).

**Affirmed.**